121 N.J. Super. 96 (1972)
296 A.2d 96
LILLIAN H. YEOMANS, PLAINTIFF,
v.
ALL STATE INSURANCE COMPANY, A FOREIGN CORPORATION DULY AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Morris County Court, Law Division.
Decided October 27, 1972.
*98 Mr. Newton H. Porter, Jr. for plaintiff.
Mr. Daniel Gilady for defendant. (Messrs. Shenier, Gilady & Harwood, attorneys).
COLLINS, J.C.C.
On July 20, 1968 plaintiff Lillian H. Yeomans was the driver of an automobile owned by her husband which collided with a vehicle driven by one Virgin. Arline Klinkenberg, a passenger in the Virgin vehicle, was injured in this accident and subsequentley recovered a judgment of $77,000 against the plaintiff herein.
Plaintiff's husband was the holder of an automobile insurance policy issued by defendant All State Insurance Company. This policy provided for a maximum bodily injury benefit of $25,000 per person. Included in this policy was a standard provision that "All State will defend any law suit, *99 even if groundless, false or fraudulent, against any insured for such damages which are payable under the terms of this policy, but may make such settlement of any claim or suit as it deems expedient."
Plaintiff seeks judgment for the difference between the $25,000 paid by All State at the time of the Klinkenberg judgment and the full sum there awarded, plus costs.
When the action against the Yeomans was brought in Superior Court, Passaic County, All State was faced with an unusual situation as Ms. Klinkenberg also brought suit against another of its insureds, said Virgin. This second assured's coverage had a maximum limit of $100,000. Because of the possibility of a large recovery All State chose not to use their own "house counsel," but instead retained "independent" attorneys for each of their insureds, Mr. Amedeo C. Jacovino for Yeomans and Mr. John J. O'Donnell for Virgin.
All State appears to have conducted a thorough examination of the possibilities of recovery by Ms. Klinkenberg, as a result of which it reserved the full $25,000 of the Yeomans policy to meet what it expected to be a liability of at least that amount. In addition, an "excess letter" was sent to, and received by, the Yeomans informing them that there was a danger of a recovery in excess of the amount of their coverage and a right on their part to retain their own counsel. While the Yeomans had already retained an attorney, Mr. Barry N. Chase, to represent them in a proceeding under the motor vehicle act relevant to this accident, they chose not to use him, or any other attorney, aside from Mr. Jacovino, at the Klinkenberg trial.
From the evidence it appears that, aside from the excess letter, there was no information given to the Yeomans with regard to the following:
1. The danger of a verdict substantially in excess of their coverage;
2. The progress of settlement negotiations, if any;
*100 3. The possibility of their contributing to a settlement beyond the $25,000 limit, or
4. The seriousness of Ms. Klinkenberg's injuries, at least not until after the trial was already under way.
5. It does not appear the Yeomans were ever informed that Mr. Virgin was also an insured of All State.
Testimony by Mr. Robert J. Passero, the attorney for Ms. Klinkenberg, indicated that the first settlement conference occurred on the first day the case was to go to trial, October 26, and that the first time the full amount of the Yeomans policy was offered was on October 27. He indicated that Mr. Richard Liva and Mr. Neil Berardi, All State representatives, had had some prior conversations with him, but that at no time prior to the start of the trial was there a firm offer of $25,000. From the testimony presented it is apparent that Mr. Passero remained adamant in his demand for $100,000 and that in his consideration of the possibilities of settlement he viewed the policies held by Yeomans and Virgin as a single source for recovery.
Of particular importance is a conversation testified to by Mr. Passero, in which Mr. Jacovino stated to him that All State was in somewhat of a delicate position as they wanted the verdict to go against Yeomans and not against Virgin.
Plaintiff has, in effect, contended that All State, in its handling of the defense in the Klinkenberg action, failed to adhere to that standard of "good faith" which an insurer must observe when dealing with its insureds. Bowers v. Camden Fire Ins. Ass'n, 51 N.J. 62, 71-72 (1968); Kaudern v. Allstate Ins. Co., 277 F. Supp. 83, 88-89 (D.N.J. 1967).
The duty which is placed upon an insurer when it undertakes to represent the interests of an insured in the defense of a negligence action may often be a hard one. Circumstances may be such that its own interests would indicate to it a course of action ultimately harmful to the insured. Thus an insurer faced with a situation where a recovery is likely to be had in excess of its insured's policy limits might still refuse to make an offer of settlement for *101 the full amount of that policy, as it might still have a chance of winning the case and thus preserving its funds, while at worst it would lose only slightly more than if a settlement in full were made earlier. Thus, where settlement offers are involved, our highest court has set out a clear standard for insurers to follow:
When it is probable that an adverse verdict will exceed the policy limit, the propriety of an insurer's refusal to accept a settlement offer which is within the coverage requires a resolution of conflicting interests. In our judgment, in view of the duty of the insurer to act in good faith, the resolution can lead to but one fair result: both interests can be served justly only if the insurer treats any settlement offer as if it had full coverage for whatever verdict might be recovered, regardless of policy limits, and makes its decision to settle or to go to trial on that basis. [Bowers v. Camden Fire Ins. Ass'n, supra, 51 N.J., pp. 71-72.]
See also, Radio Taxi Service, Inc. v. Lincoln Mutual Ins. Co., 31 N.J. 299 (1960).
* * * the purpose of liability insurance is to protect the assured from liability within the limits of an insurance contract, and an insurer cannot frustrate that policy by a selfish decision as to settlement which would expose an insured to a judgment beyond the purchased protection. [Deblon v. Beaton, 103 N.J. Super. 345, 351-352 (Law Div. 1968).]
Unfortunately for plaintiff it appears from the evidence presented that All State did, albeit at a very late stage, allocate funds for, and offer in settlement, the full amount of the Yeomans' coverage. Thus, strictly speaking, defendant did eliminate one indication that it may have acted in bad faith towards its insured. However,
* * * where the claim exceeds policy limits there is always present a possible conflict of interest between the insurer-agent and the insured-principal, and the insurer's conduct is therefore "subject to closer scrutiny than that of the ordinary agent." [Coppage v. Firemen's Fund Ins. Co., 379 F.2d 621 (6 Cir.1967)]
*102 Factors other than whether a settlement offer in the full amount of the policy has been made could be determinative of the question as to whether or not the insurer has acted in good faith. There is "a duty of fair and full disclosure between insured and his insurer," and where, as here, the insurer undertook to represent its insured, its duties included
apprising the client of settlement opportunities within a reasonable time after they were presented; it entailed the duty to warn the client of difficulties which the litigation posed for him wherever such difficulties were not included within the contract of indemnity; it included the duty to advise the client of the outcome of the litigation and of any particular procedures which might lessen its financial impact upon him; and it included the conduct of settlement negotiations in good faith to the interests of the insured wherever those interests might be divergent from the interests of the insurance company. [Ging v. American Liberty Ins. Co., 423 F.2d 115, 120-121 (5 Cir.1970)]
The Second Federal Circuit Court of Appeals, in 1969, had occasion to pass upon a situation, in the light of New York Law, where some of the factors now present before this court were involved:
We recognize that, in the usual case, to establish bad faith by the insurer, an insured should demonstrate that the claim could have been settled within the policy limits, or, if only a settlement in excess of the coverage could have been achieved, that the insured was willing and able to provide the excess amount. But we believe that under New York law, where an insured reasonably relies upon its insurer to conduct settlement negotiations, and such insurer neither attempts to secure a modification of the initial settlement demand nor communicates that demand to its insured, the jury may find that the insurer did not act in good faith.
Where an insurer receives an offer of settlement in excess of the coverage of its policy it acts in bad faith if it fails to make any attempt to engage the insured plaintiff's counsel in discussions seeking a reduction in the initial settlement demand and if it fails to inform its insured of the opportunity to settle. The initial demand of plaintiff's counsel often will be as far removed from the actual figure acceptable in settlement as the ad damnum in the complaint is removed from the initial settlement demand, especially in a personal injury action. It is a matter of common knowledge that it is *103 a rare case where exploration of the possibilities of settlement, beyond the mere receipt of the plaintiff's demand, will not result in some substantial reduction of the amount.

* * * * * * * *
To require the insured to establish his willingness to contribute toward a settlement presupposes a settlement figure toward which contribution may be made. The personal injury plaintiff's initial demand is not the settlement figure against which proof of an insured's willingness to contribute should be measured. Had the insurer attempted to fulfill its responsibility by preliminary negotiations of the initial demand figure, the resultant settlement might well have been within the policy limits or, at worst, within the ability of the insured to make sufficient contribution to effect a settlement. Any doubt which admittedly exists in speculating on these possibilities should be resolved in favor of the insured unless the insurer, by some affirmative evidence, demonstrates that not only was there no realistic possibility of settlement within the policy limits, but also that the insured would not have contributed to whatever settlement figure could have been obtained. [Young v. American Cas. Co. of Reading, Penn., 416 F.2d 906, 910-911, cert. dis., 396 U.S. 997, 90 S.Ct. 580, 24 L.Ed.2d 490 (1969)]
In order to fulfill its duty towards the insured the insurer must be careful to respect his right to informed participation in the settlement negotiations. Lysick v. Walcom, 258 Cal. App. 2d 136, 65 Cal. Rptr. 406 (1968); Brown v. Guarantee Ins. Co., 155 Cal. App.2d 679, 319 P.2d 69, 66 A.L.R.2d 1202 (D. Ct. App. 1957); Kaudern v. Allstate Ins. Co., supra, 277 F. Supp. at 88-89. However, a failure of the insurer to communicate an offer of settlement to the insured "standing alone without other elements of bad faith or a conflict of interests being present does not justify a finding of bad faith and the imposition of liability upon the insurer." Hodges v. Standard Accident Ins. Co., 198 Cal. App.2d 564, 578, 18 Cal. Rptr. 17, 26 (D. Ct. App. 1961).
In the instant case there appears to this court to have been more than a simple failure to inform the Yeomans of the progress, or lack, of any settlement negotiations. There was apparently no real effort made by defendant, until the trial was already under way, to even begin such negotiations, although there was some indication of a "feeling out" by All State as to plaintiff's possible expectations. *104 Further, All State failed to disclose to the Yeomans that the co-defendant, Virgin, was another of its insureds and that his policy was far larger than that held by the Yeomans. It appears from the evidence presented that the Yeomans were informed of their right to contribute towards a settlement only on the eve of the trial, giving them little, if any, opportunity to muster whatever resources might have been available to them to "throw into the pot." Given the concern, revealed in the current proceedings, which All State had in avoiding any finding of liability as to Virgin, the failure to give timely notice to Yeomans of the possibility of contribution, to inform them of the character of Virgin's insurance policy, and to indicate to them with proper emphasis the serious danger they were in of being subjected to a judgment in excess of their insurance coverage as a result of injuries sustained by Ms. Klinkenberg, the severity of which they were not fully aware until the trial began, becomes evidential of a circumstance in which bad faith, as opposed to simple negligence, or poor judgment, is controlling. Further, even were the above listed factors viewed as being evidential only a certain negligence on All State's part, "Although negligence alone is insufficient to render the insurer liable, serious and recurrent negligence may be indicative of bad faith." Brown v. United States Fidelity and Guaranty Co., 314 F.2d 675, 679 (2 Cir.1963).
Of foremost concern to this court, in attempting to gauge the conduct of defendant as it affected its insureds, is the question of whether All State could possibly have acted towards the Yeomans in some other manner than it did, especially as to the general conduct of its insureds' defense, in order to safeguard the interests of the insureds while protecting itself as well as possible. The facts of this case appear to be very special. The company, due to the very different, indeed conflicting, positions of the co-defendants, both of whom were its insureds, was faced with a situation where, because the attorney for Ms. Klinkenberg viewed both defendants as a common source for recovery, and because its *105 own investigations indicate to the company that were the case to go to trial the Yeomans would almost certainly be held liable while a verdict against Virgin would be very unlikely, it would be impossible for an attorney retained by All State, owing his first loyalty to that company, to properly represent and protect the Yeomans. This view is confirmed when one considers the statement made by Mr. Jacovino to Ms. Klinkenberg's attorney on the day of the trial wherein he said All State was in somewhat of a delicate position as they wanted the verdict to go against Yeomans and not against Virgin.
Our courts have recognized that rare situations may arise where a carrier will be precluded from solely determining the particular counsel who is to represent one of its insureds. Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 391 (1970).
* * * the insurer has one primary interest: to give that defense which the policy promised and to perform that promise in accordance with the standards of the local law (prudence or good faith). If its interests are antagonistic to the assured, it has not fulfilled this promise. Its contract, with specified dollar limits, may perhaps put it in a somewhat difficult position. But always it must act with requisite care (good faith or prudence as local law spells out) toward the assured's interest. It may, of course, properly consider its own interest, but it may never, never forget that of its assured. [Smoot v. State Farm Mutual Automobile Ins. Co., 299 F.2d 525, 532 (5 Cir.1962)]
Given the conflict of interest inherent in the special circumstances of the instant case and the duty to act in good faith imposed upon All State by its position, this court feels All State could have taken only one course of action in order to properly meet its obligations. This was to fully inform the Yeomans, well in advance of trial, of the situation creating the conflict of interest for the company and to insist that the Yeomans select their own attorney to represent them. In short, where a conflict of interest as serious as the one here presented arises between an insurer and its insured, "the *106 selection of the attorneys to represent the assureds should be made by them rather than by the insurance company, which should remain liable for the payment of the reasonable value of the services of whatever attorneys the assureds select." Prashker v. United States Guarantee Co., 1 N.Y.2d 584, 593, 154 N.Y.S. 2d 910, 136 N.E.2d 871, 876 (Ct. App. 1956). Of course, the insured's selection would be subject to the approval of the company, but such approval should go only to the issue of the competence of the particular attorney retained. As the insureds in this case were clearly not experienced in matters of insurance, the mere sending of an "excess letter" cannot be said to be sufficient to allow the company to assert its good faith. As the company made clear by the evidence which it presented, almost immediately upon the conclusion of its investigation subsequent to the accident it deemed the Yeomans a "lost cause," and allocated funds to meet the expected liability. Its only further interest was to protect Virgin. In effect, the only interest that might have been adversely affected by an insistence upon truly independent counsel was the Virgin defense. Given All State's duty to the Yeomans, this was not a proper consideration.
Had the Yeomans been given truly independent legal counsel, well in advance of trial, they would have had ample time to have started to accumulate monies for a settlement contribution. Even more importantly, plaintiff would have been forced to treat the Yeomans as parties fully distinct and independent from Virgin and All State. In such circumstances a settlement protective of the Yeomans' interest might have been reached. At the least, they would have been guaranteed of a full and adequate representation of their interests, both at and prior to the trial.
In light of the fact that both counsel for defendants were, in effect, representatives of All State, it appears, given the antagonistic position each of the defendants in the Klinkenberg action necessarily occupied vis-a-vis the other, impossible to this court that the Yeomans' interests could have been properly protected. Here the company had a pecuniary interest *107 in affecting the allocation of liability between these parties and the conduct of their defenses. The very tolerance of such a situation raises doubts as to the good faith of the defendant. See O'Morrow v. Borad, 27 Cal.2d 794, 167 P.2d 483 (Cal. Sup. Ct., en banc, 1946).
"Good faith is a broad concept. Whether it was adhered to by the carrier must depend upon the circumstances of the particular case." Bowers v. Camden Fire Ins. Ass'n., supra, 51 N.J. at 71. "Good faith implies honesty, fair dealing and full revelation." Davy v. Public National Ins. Co., 181 Cal. App. 2d 387, 396, 5 Cal. Rptr. 488 (D. Ct. App. 1960).
It is the opinion of this court that All State failed to act towards plaintiff "without allowing its own interests to predominate over those of the assured." Shapiro v. Allstate Ins. Co., 44 F.R.D. 429, 431 (E.D. Pa. 1968). In short, All State failed to act in good faith towards plaintiff, as a result of which failure the injury complained of occurred.
Judgment for plaintiff.