127 N.J. Super. 187 (1974)
316 A.2d 726
RONALD BEEK, PLAINTIFF,
v.
OHIO CASUALTY INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided January 8, 1974.
*189 Mr. Richard H. Wildstein for plaintiff. (Messrs. Gelman and Gelman, attorneys).
Mr. Thomas M. Guiney for defendant. (Messrs. DeYoe, DeYoe & Guiney, attorneys).
GELMAN, J.S.C., Temporarily Assigned.
Plaintiff Ronald Beek moves for summary judgment directing defendant Ohio Casualty Insurance Company (Ohio) to proceed with arbitration of plaintiff's claim under an uninsured motorist (UM) endorsement.
Beek was the owner of a 1970 Ford automobile on which Ohio issued a liability policy containing UM coverage effective for a one-year term from October 22, 1969. On June 13, 1970 Beek was seriously injured while operating a motorcycle which was involved in an accident with an uninsured motorist. Beek had purchased liability insurance coverage for the motorcycle from Reserve Insurance Company. The Reserve policy also contained a UM endorsement and Reserve paid Beek the full amount of its coverage ($10,000) under its policy.
For the purposes of this motion it is conceded that Beek would be entitled to recover from the uninsured motorist an amount in excess of that which he was paid under the Reserve policy. He claims that Ohio is obligated to pay to him such excess liability of the uninsured motorist up to the limits of the UM coverage afforded by the Ohio policy, for which Ohio charged him and he paid a separate premium.
Ohio contends that its policy does not furnish coverage for Beek's claim because of the following language contained in the exclusions clause of the UM endorsement:

Exclusions
This insurance does not apply:

* * * * * * * *
(b) to bodily injury to an insured while occupying a highway vehicle (other than an insured highway vehicle) owned by the named insured, any designated insured, or through being struck by such a vehicle, but this exclusion does not apply to the named insured or *190 his relatives while occupying or if struck by a highway vehicle owned by a designated insured or his relatives.
The above-quoted language excludes coverage if Beek was injured while occupying another vehicle owned by him, but the exclusion is in turn subject to two exceptions: (1) if the second vehicle occupied by the named insured is "an insured highway vehicle," or (2) if the second vehicle occupied by the named insured is owned by a "designated insured or his relatives."
As to the first exception defendant urges that Beek's motorcycle is not an insured highway vehicle by reason of section V, captioned "Additional Definitions" and which provides in part:
* * * "insured highway vehicle" means a highway vehicle: * * * (c) while being operated by the named or designated insured or by the spouse of either if a resident of the same household; but the term "insured highway vehicle" shall not include: * * * under subparagraphs (b) and (c) above, a vehicle owned by the named insured, any designated insured or any resident of the same household as the named or designated insured * * *.
Since the motorcycle was owned by Beek, it is not "an insured highway vehicle" as that term is defined in the policy, and the first exception therefore does not apply.
As to the second exception, it applies to the named insured but only if injured while occupying a vehicle owned by a designated insured, which is not the case here, since the motorcycle was owned by Beek who is the named, not a designated, insured under the Ohio policy. While the structure of the policy and the language employed to accomplish the claimed exclusion is subject to criticism, the basic intent of the insurer is clear and unambiguous: to deny coverage to the named insured under all circumstances if he is injured in a nonscheduled vehicle owned by him.
Plaintiff contends that the blanket exclusion from UM coverage for injuries sustained while occupying a second owned vehicle violates the intent and purpose of the *191 Legislature in enacting N.J.S.A. 17:28-1.1. The statute requires that
No automobile liability policy or renewal of such policy, of insurance insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State * * * unless coverage is offered in connection therewith, in limits for bodily injury or death set forth in [N.J.S.A. 39:6-69] * * * for payment of all or part of the sums which the insured or his legal representative shall be legally entitled to recover as damages from the operator or owner of an uninsured automobile, or hit and run automobile * * * because of bodily injury * * * sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured or hit and run automobile * * *.
The argument is that a policy which denies coverage in contravention of a declared legislative edict that such coverage be afforded, must be deemed amended so as to conform to the legislative requirements. Selected Risks Ins. Co. v. Zullo, 48 N.J. 362 (1966); Kish v. Motor Club of Amer. Ins. Co. 108 N.J. Super. 405 (App. Div. 1970), certif. den. 55 N.J. 595 (1970); Willis v. Security Ins. Group, 104 N.J. Super. 410 (Ch. Div. 1968), aff'd 53 N.J. 260 (1969); McFarland v. Motor Club of Amer. Ins. Co., 120 N.J. Super. 554 (Ch. Div. 1972).
In McFarland the court was also concerned with the interpretation of a UM endorsement which denied coverage under the insured's policy where he had been paid the statutory UM minimum by the insurer of the vehicle in which he was a passenger. The policy in McFarland provided "excess" coverage only to the extent that the insured's own UM coverage limits exceeded the UM coverage provided by the primary insurance. Since both policies were issued with statutory minimum limits, the McFarland insurer rejected the claim that its policy furnished any excess coverage. The court held that the policy was in conflict with N.J.S.A. 17:28-1.1, in that the Legislature mandated UM coverage not limited to the statutory minimum afforded by N.J.S.A. 39: *192 6-69, but for "all" sums which the insured might be entitled to recover to the limits of available insurance. The court concluded that
Where an insured's loss exceeds the limits of one policy, he may proceed against other available policies. * * * [T]his court will not permit an insurer to escape its statutorily imposed liability by including in its policy a limiting clause which prevents the insured from receiving coverage he has paid for. [At 563]
As applied to the facts here, McFarland's reasoning would require amendment of the Ohio policy to furnish coverage to the named insured regardless of his ownership of the vehicle involved in the accident.
The basic question posed in McFarland and here is whether the legislative policy reflected in N.J.S.A. 17:28-1.1 requires insurers to offer UM coverage which permits "stacking" of coverages under multiple policies so as to permit insureds to recover the full monetary value of their claims against uninsured motorists. Ohio contends that the legislative purpose underlying N.J.S.A. 17:28-1.1 does not have so broad a reach. It is urged that the statute was intended only to ensure that policy holders would be offered UM protection in limits corresponding to the amounts fixed by the Legislature in the Unsatisfied Claim and Judgment Fund Law, N.J.S.A. 39:6-61 et seq. As a consequence, insurers are free to offer UM coverage containing provisions which preclude stacking where multiple policies are issued to the same individual covering more than one vehicle under the same ownership.
In support of this view Ohio relies on Allstate Insurance Co. v. McHugh, 124 N.J. Super. 105 (Ch. Div. 1973). In McHugh the insured owned two vehicles, both of which were insured by Allstate under one policy containing two declaration sheets, and UM coverage in the statutory minimum amount was included for each vehicle. The insured was injured in an automobile accident with an uninsured motorist while operating one of the insured vehicles, and claimed *193 that he was entitled to collect double UM coverage because he had paid two premiums. The court rejected this contention because in its view the purpose of N.J.S.A. 17:28-1.1 was to ensure coverage only to the extent of the recovery limits set forth in the Fund Law, supra. The court in McHugh acknowledged that while insurers could voluntarily enlarge the limits of UM coverage,
* * * any increase in the limits of liability should be expressed in the policy and not imposed upon an insurance company by a tortured construction of either the policy or the statute. [124 N.J. Super. at 111]
As noted in McHugh, several jurisdictions have dealt with the problem of stacking uninsured motorist coverage and have come to different conclusions. Two Pennsylvania cases, not cited in McHugh, illustrate the diversity of the opinions elsewhere. In Bankes v. State Farm Mutual Auto. Ins. Co., 216 Pa. Super. 162, 264 A.2d 197 (Super. Ct. 1970), the named insured was killed in an accident with an uninsured motorist while operating a motorcycle he owned but which was uninsured. The court construed an exclusions clause, similar to the one present here, as being in conflict with the legislative policy embodied in the Pennsylvania equivalent of N.J.S.A. 17:28-1.1 because it extended the exclusion to include an owned motorcycle as well as other owned automobiles. The court stated
* * * the provisions of the uninsured motorist act must be liberally construed so that innocent victims will be protected from irresponsible drivers. The intent of this act is that an insured recover those damages which he would have received had the uninsured motorist maintained liability insurance. [264 A. 2d at 199-200]
In Nationwide Mut. Ins. Co. v. Ealy, 221 Pa. Super. 138, 289 A.2d 113 (1972), the same court had before it a claim made by the named insured who had five separate policies containing UM coverage, each policy insuring a separate automobile. Each policy contained a provision excluding *194 from its coverage other vehicles owned by the insured. The insured was injured while occupying one of the insured automobiles as the result of an accident with an uninsured motorist, and he sought to stack the coverage of all of the policies. The court rejected the claim, stating:
The above-quoted [Pennsylvania Uninsured Motorist] act has as its purpose the protection of innocent victims from irresponsible drivers. * * * The primary thrust of the act is to insure that the innocent victims are not left completely uncompensated. Accordingly, insurance companies are required to provide at least minimal uninsured motorist coverage for their insureds. However, nothing in the act authorizes insureds to cumulate their individual coverages in order to exceed the minimum coverage required by law. Since in the present case the appellees contractually agreed not to cumulate the coverages on their five vehicles, and since they will still be afforded recovery on one of the policies in compliance with the minimum standards set by the state, we find that they cannot recover on the other four policies covering the vehicles not involved in the accident. [289 A.2d at 115]
The court went on to distinguish Bankes on the ground that a contrary interpretation in that case would have resulted in a denial of any recovery at all, which it deemed to be contrary to the essential purposes of the act.
The reasoning of the court in Ealy is consistent with McHugh and finds support in the limited legislative history available with respect to N.J.S.A. 17:28-1.1. See Obst v. State Farm Mut. Auto. Ins. Co., 123 N.J. Super. 60 (Ch. Div. 1973); Hannan v. Employers Commercial Union Ins. Co, 117 N.J. Super. 485 (Law Div. 1971); Exum v. Marrow, 112 N.J. Super. 570 (Law Div. 1970). In each of the cited cases the court noted that the legislative purpose in enacting N.J.S.A. 17:28-1.1 was to relieve the Unsatisfied Claim and Judgment Fund from the financial burden of meeting the growing number of claims being made against the Fund. By requiring insurers to offer UM coverage in limits at least equal to the Fund's liability as part of the automobile liability insurance package, the Legislature effectively eliminated *195 the Fund's liability to the extent that policyholders did not reject the coverage. Exum v. Marrow, supra at 575.
The legislative intent to use N.J.S.A. 17:28-1.1 to protect the financial viability of the Fund is also manifest in the recent amendment of that statute in which the limits of UM coverage to be included in the liability package were increased to $15/30,000 to correspond with legislation increasing the Fund's liability. See L. 1972, c.c. 198, 204. It is apparent that the objective of the statutory scheme is not to compel UM coverage in such form as to maximize a policyholder's recovery in the uninsured motorist situation, but only to ensure recovery by the insured motorist in such amount as will avoid liability on the part of the Fund. It would follow, therefore, that the exclusions clause of the Ohio policy here is not violative of any legislative command and it should be applied as written.
Judgment will be entered dismissing the complaint without costs. The attorney for the defendant shall submit the order in accordance with R. 4:42-1.