130 N.J. Super. 48 (1974)
324 A.2d 906
LILLIAN H. YEOMANS, PLAINTIFF-RESPONDENT,
v.
ALLSTATE INSURANCE COMPANY, A FOREIGN CORPORATION DULY AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1973.
Decided August 20, 1974.
*50 Before Judges HANDLER, MEANOR and KOLE.
Mr. Victor C. Hansen argued the cause for appellant (Messrs. Gleeson, Hansen & Pantages, attorneys).
Mr. Newton H. Porter, Jr. argued the cause for respondent.
*51 PER CURIAM.
This is an appeal from a judgment holding defendant liable for the difference between its policy limit and the amount of an excess judgment against its insured. The trial court's opinion is reported. Yeomans v. All State Ins. Co., 121 N.J. Super. 96 (Cty. Ct. 1972). We withheld our decision to await the guidance of Rova Farms Resort, Inc. v. Investors Ins. Co. of America, 65 N.J. 474 (1974). We affirm subject to the following.
The thesis of the trial court's opinion was that Allstate breached its fiduciary duty to keep its insured, Mrs. Yeomans, informed of the seriousness of the injuries and the virtual certainty of a judgment against her in excess of the policy limit. Allstate also never informed Mrs. Yeomans, until trial was imminent, of its decision to commit its policy limit toward settlement, and of the impossibility of a contribution from the codefendant who was also insured by Allstate and with respect to whom the quite valid decision had been made that there was no liability.
The net result of this was that the insured was deprived of any realistic opportunity to prepare to participate in a settlement above policy limits since it was not until the eve of trial that the nature of her position was made known to her.
We agree with the finding of the trial court that the claim against her could not have been settled within Mrs. Yeomans' policy limit. Under Rova Farms, supra, an insurer has an affirmative duty to negotiate in an attempt to bring the demand within policy limits or within an amount that can be realized by a combination of the policy limit and what the insured is willing and able to contribute. Rova Farms, supra at pp. 493-496. Here Allstate did no more than offer its limit; it did not negotiate for a reduction in demand. In fact, negotiation would have been fruitless because a contribution from the insured was essential to settlement, and the previous breach of duty by Allstate had frustrated whatever contribution the insured could have made.
*52 Allstate assails the trial court's finding that its breach of duty was a proximate cause of the insured's loss of the difference between the policy limit of $25,000 and the judgment of $77,000. In response to this argument, we quote from Rova Farms:
We, too, hold that an insurer, having contractually restricted the independent negotiating power of its insured, has a positive fiduciary duty to take the initiative and attempt to negotiate a settlement within the policy coverage. Any doubt as to the existence of an opportunity to settle within the face amount of the coverage or as to the ability and willingness of the insured to pay any excess required for settlement must be resolved in favor of the insured unless the insurer, by some affirmative evidence, demonstrates there was not only no realistic possibility of settlement within policy limits, but also that the insured would not have contributed to whatever settlement figure above that sum might have been available. [at 496]
For these propositions the Supreme Court cited Young v. American Cas. Co., 416 F.2d 906 (2 Cir.1969), cert. dism. 396 U.S. 997, 90 S.Ct. 580, 24 L.Ed.2d 490 (1970). Young was quoted extensively and relied upon by the trial court. 121 N.J. Super. at 102-103. We interpret the above passage from Rova Farms in light of the citation of Young to mean that where an insured establishes bad faith on the part of the insurer, a prima facie case of damages for the difference between the policy limit and the excess verdict has also been shown. It is then up to the insurer to demonstrate that settlement could not have been achieved within the policy limit or for the policy limit plus any amount the insured would have been able and willing to contribute. This is the rationale of Young and the passage from Young expressing it is quoted in the trial court opinion. 121 N.J. Super. at 103.
There was proof that during the trial of the negligence case the trial judge in that matter directed an inquiry to Mr. and Mrs. Yeomans seeking to determine if they were willing to contribute $10,000 toward settlement. Their response was negative. There was also testimony adduced below from Mr. Jacovino, trial counsel selected by Allstate *53 for the Yeomans, that when he broached with them the subject of a settlement contribution their response was to the effect that they had no appreciable assets. From the fact that there were no assets from which to realize a settlement contribution at the time of Mr. Jacovino's inquiry just prior to trial, it by no means follows that the insured could not have made a significant contribution had she had the advance notice of her precarious legal position to which she was entitled.
We read the trial court's opinion, in light of its reliance on Young, supra, as holding that the insurer brought forth no proofs sufficient to overcome the prima facie case of proximate cause and damages made out by the establishment of Allstate's bad faith. Under State v. Johnson, 42 N.J. 146, 162 (1964), we are powerless to disturb these factual conclusions. See also Rova Farms, supra at pp. 483-484 of 65 N.J.
We must, however, disassociate ourselves from that portion of the trial court's opinion holding that under the circumstances Allstate should not have selected defense counsel, but should have permitted the Yeomans to do so, subject to Allstate's approval and at its expense. Two of the cases cited in support of this theory, Burd v. Sussex Mutual Ins. Co., 56 N.J. 383 (1970), and Prashker v. United States Guarantee Co., 1 N.Y. 2d 584, 154 N.Y.S.2d 910, 136 N.E.2d 871 (Ct. App. 1956), are not pertinent. They involved the issue of the company's right to control the defense of pending tort litigation where the company disputed its obligation to pay any adverse judgment that might be rendered.
Here, although Allstate also insured the Yeomans' codefendant, no criticism has been made of the decision that the codefendant was not liable and that no settlement contribution would be offered on his behalf. No issue has been raised concerning Mr. Jacovino's presentation of the case. It has not been averred that he did not provide the Yeomans with a competent defense, or that he shirked in his duty *54 to attempt to hold in the codefendant. In short, under the circumstances here, we believe that Allstate fulfilled its duty in the matter of representation for its insureds by selecting independent outside counsel for each of them. See N.J. Mfrs. Ins. Co. v. Haran, 128 N.J. Super. 265, 270 (App. Div. 1974), and Oda v. Highway Ins. Co., 44 Ill. App.2d 235, 194 N.E. 2d 489 (App. Ct. 1963). In the ordinary case, where the same company covers codefendants whose interests are antagonistic, retention of separate and independent counsel for each will ordinarily suffice to fulfill the carrier's duty. Any breach of duty thereafter will be remediable by an action against the carrier for negligence or bad faith, or by a professional liability action against the attorney. If there is a case where the company's duty toward antagonistic codefendants cannot be met by the retention of separate and independent outside counsel, it may be necessary to follow the suggestion of the court below. This, however, is not such a case.
Affirmed.
MEANOR, J.A.D. (concurring).
I join the opinion of the court only because of the compulsion of Rova Farms Resort, Inc. v. Investors Ins. Co. of America, 65 N.J. 474 (1974).
I agree that we may not disturb the trial court's finding of a breach of duty on the part of Allstate in not informing its insured until immediately prior to trial of the near certainty of a verdict in excess of policy limits against Mrs. Yeomans alone. If this breach of duty deprived Mrs. Yeomans of a reasonable opportunity to prepare to contribute, then I agree that Allstate should be liable if adherence to its duty would have permitted settlement for the policy limit plus an amount that Mrs. Yeomans would have been able and willing to pay.
I would think, however, that if the point were raised, in a case where settlement could have taken place only with a contribution by the insured, a company found in bad faith *55 would be required to pay not the difference between policy limit and verdict, but only the difference between the probable settlement figure and the verdict. In this case there is no doubt that the claim against Mrs. Yeomans could not have been settled within her policy limit. The plaintiff against her was a passenger suing two drivers and had injuries that made a verdict in excess of $25,000 as certain as is anything in the law. It is clear that Allstate had made a valid good faith determination not to pay on behalf of the codefendant and thus the case had to be tried as to him. Since a settlement with Mrs. Yeomans would have meant a 50% reduction of any judgment against her codefendant, Theobald v. Angelos, 44 N.J. 228, 241 (1965), it is obvious that substantial obstacles stood in the way of setlement. It is also true that the personal assets of Mrs. Yeomans would be available upon execution after a verdict against her alone. Thus, the only realistic settlement of the claim against Mrs. Yeomans would be with the excess over the policy limit being made up in significant part by assets that would not be reachable on execution such as borrowed money, a pledge of jointly owned property by both Mr. and Mrs. Yeomans, or the like.
The burden of producing evidence is often placed on that party which has greater access to the facts relevant to the issue at hand. On this principle I have no great quarrel with the proposition that once the insured proves bad faith or some similar dereliction upon the part of the insurer, the insurer should be required to produce evidence showing a probability that the case could not, in any event, have been settled within policy limits. Normally, the insurer will have greater access to the necessary facts since its agents and attorneys most likely will have been the ones to conduct the settlement negotiations. But once the insurer satisfies this burden, it seems to me that the insured should be required to demonstrate a probability that he was able and willing to make sufficient contribution in excess of policy limits to achieve settlement. To have the insurer prove that the insured *56 did not have sufficient assets to consummate such a settlement or that the insured would have spurned such an opportunity, puts the insurer in the unhappy position of having to prove a subjective negative on facts exclusively, or nearly so, in possession of the adversary. To me, this is an unfair allocation of the burden of producing evidence.
On this analysis, I would remand this matter for a determination of whether the case against Mrs. Yeomans probably could have been settled by a contribution which she would have been able and willing to make toward settlement had she been properly forewarned by Allstate of the expected outcome of the case against her. In the event that Mrs. Yeomans was able to show that the case probably could have been settled at a figure that could have been attained by her payment in excess of policy limits, then her damages would be the difference between that probable settlement figure and the verdict.
However, I read Rova Farms, supra, as placing on the insurer not only the burden of establishing the improbability of accomplishing settlement within policy limits, but also the burden of demonstrating that no settlement outside policy limits could have been made when taking into account the contribution, if any, the insured was able and willing to make. This understanding of Rova Farms compels me to join the court's opinion since I agree that the trial judge applied the Rova Farms principle and found the insurer's proofs wanting.