640 A.2d 879

SHARON PERRY, PLAINTIFF, v. ALBERT J. BROWN, ET AL., DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided December 8, 1993.

*Albert Brown,* pro se.

*Francesca Amendola,* for plaintiff.

YANOFF, J.S.C. (temporarily assigned, retired, on recall).

■ This opinion is a supplement to that portion of *Fuechtbaum v. Constantini,* 59 *N.J.* 167, 280 *A.*2d 161 (1971), which authorized service upon the Unsatisfied Claim and Judgment Fund (*N.J.S.A.* 39:6–61 to –91). The *Fuechtbaum* case dealt with two classes of

defendant: 1) a defendant having insurance coverage; and 2) a defendant without insurance coverage.

As to both, the Court ruled that service could be made in the case of the insured defendant, upon the insurance company, and in the case of the uninsured defendant, upon the Unsatisfied Claim and Judgment Fund, by the method provided by the decision. As to the insured defendant, the Court stated, or implied, that by service upon the insurance carrier, due process of law would be satisfied in a judgment against the defendant. Chief Justice Weintraub's opinion is illuminating:

> The remaining consideration is fairness to the defendant. As to this, assuming he was aware of an involvement in an accident, as is the case here, it is the defendant's own behavior which, so far as we know, will deprive him of notice of the suit if it fails to reach him. Defendant gave the police an address in Hillside, New Jersey, where he apparently did live at that time. Later defendant departed, leaving no forwarding address with the postal authorities, or the police, or his employer, or the plaintiff, or with his carrier according to its representations. As *Dobkin* [*v. Chapman*, 21 *N.Y.*2d 490, 289 *N.Y.S.*2d 161, 236 *N.E.*2d 451] said, "in an automobile case, no defendant need be without notice unless he chooses and wants to be," 21 *N.Y.*2d at 504, 289 *N.Y.S.*2d at 173, 236 *N.E.*2d at 459. Further, the carrier's interest in defeating plaintiff's claim will coincide with defendant's interest, and if the carrier should be able to disclaim because of defendant's disappearance (an issue which was recently dealt with in *Dougherty v. Hanover Insurance Co.*, 114 *N.J.Super.* 483 [277 *A.*2d 242] (Law Div.1971), and upon which we of course express no view here), the Fund will be obliged to take over, *N.J.S.A.* 39:6-65, and again, its interest in the defense of the case will be the same as defendant's. Thus there is a substantial promise that the merits of the controversy between plaintiff and defendant will be handled fairly. And, finally, there may remain an opportunity for defendant at some later date to seek relief from a judgment against him upon a just showing to that end. *R.* 4:50–1.

> [*Id.* at 177–78, 280 *A.*2d 161.]

However, as to the uninsured defendant, the Court did not say that he would be bound by a judgment; instead,

> Hence we are satisfied that where, as here, it appears from an adequate investigation that the defendant cannot be served by any of the prescribed modes, it is appropriate to order substitute service under *R.* 4:4–4(i). In the circumstances of these cases, that mode should be ordinary mail to defendant at his last known address. The order should also provide for notice to the Fund, *not thereby to achieve service on the defendant, but rather to apprise the Fund of a situation with which it may be concerned.*

[*Id.* at 181, 280 *A.*2d 161 (emphasis added).]

The Court did not decide whether a judgment, in a case which the Fund defended, would bind the uninsured named defendant, even though he or she was not served. That issue is presented in this case. It arose from a motion for wage execution against Albert J. Brown, named as defendant. Brown made an application for a hearing. The facts to which reference is made emerged at the hearing and from an examination of the file.

Initial service was made by substitution. The attorney for plaintiff filed a certification stating that service of the summons and complaint was attempted upon the defendant, Brown, at an address in Morristown, and was returned marked "subject moved leaving no forwarding address with Post Office." Postal searches and motor vehicle searches turned out to be fruitless. Then, an attempt was made to serve him in Union County, where the return stated, "moved according to resident." The certification continues: "Since I have been unable to make personal service upon the defendant, Albert Brown, it is respectfully, requested that substituted service be allowed on the Unsatisfied Claim and Fund Board." An order for service pursuant to *Fuechtbaum* was made under date of November 20, 1992. The result was a judgment in favor of the plaintiff, on May 24, 1992. The order states 1992, but, in fact, the filing stamp shows that it actually was executed in 1993.

There is in the jacket a letter from a "Settlement Judge" dated August 18, 1992, in which he says:

Jason Winkler, counsel for defendant Heckstali was present. Another defendant (Brown) had not been served. Mr. Winkler had been retained by the Unsatisfied Claim and Judgement [sic] Fund and both parties agreed that the Fund might be brought into the case on behalf of the yet unserved defendant.

It is thus clear that at the time, all parties knew that Brown had not been served and that when the Fund was served he had no notice of the action. It is also clear that the Fund had no way to advise Brown that he had been sued.

I gathered from the statements made to me when I heard the application for wage execution that the judgment had been paid by

the Unsatisfied Claim and Judgment Fund, which directed the attorney for the plaintiff to pursue collection from Brown. Somehow, the attorney for the plaintiff learned that Brown was employed by the Montclair Post Office.

Brown stated in open court that there had been no accident. Thus, he was not in the category of the defendant in *Feuchtbaum* who, the Court said, should have known from the fact that he was in an accident, that he might be sued.

I held that there was no jurisdiction over Brown. It followed that judgment should not have been entered against him and therefore, no wage execution. This opinion is written to explain my ruling and to deal with a fundamental jurisdictional problem which arises in the application of *Feuchtbaum*.

I start with *Pennoyer v. Neff*, 95 *U.S.* 714, 24 *L.Ed.* 565 (1877), although I recognize that it has been modified in very important respects by the "long-arm" cases initiated by *International Shoe Co. v. Washington*, 326 *U.S.* 310, 66 *S.Ct.* 154, 90 *L.Ed.* 95 (1945). We have long departed from the notion set forth in *Pennoyer* that jurisdiction is dependent upon service within the territorial boundaries in which the court sits. Substituted for the concept of "personal presence of the defendant in the jurisdiction" has been the requirement of "minimum contacts." *Mullane v. Central Hanover Bank and Trust Co.*, 339 *U.S.* 306, 70 *S.Ct.* 652, 94 *L.Ed.* 865 (1950).

*Feuchtbaum* does not depart from these principles. While *Pennoyer* is not cited in *Feuchtbaum*, the requirements of that case underlie the entire decision and the basic principle of *Pennoyer* remains undisturbed, that a court may not act against a party unless in some manner it acquires jurisdiction. In *Pennoyer*, an Oregon statute provided for service of summons upon parties, either personally or at their residence, as does our own rule, and further provided that if service could not be made, and a court determined that a cause of action existed against the defendant, judgment could be entered against him. The trial court and the circuit court held that a judgment against a non-resident

without personal service, within Oregon, was void for lack of jurisdiction. The Supreme Court, by majority, affirmed. Mr. Justice Field stated:

> But if the court has no jurisdiction over the person of the defendant by reason of his non-residence, and, consequently, no authority to pass upon his personal rights and obligations; if the whole proceeding, without service upon him or his appearance, is *coram non judice* and void; if to hold a defendant bound by such a judgment is contrary to the first principles of justice,—it is difficult to see how the judgment can legitimately have any force within the State.
>
> [*Pennoyer v. Neff, supra,* 95 *U.S.* at 732, 24 *L.Ed.* at 572.]

While Chief Justice Weintraub in *Feuchtbaum,* relies upon cases which modify the principles of *Pennoyer* by permitting service of process without actual physical delivery, or leaving at place of residence, *Feuchtbaum* nowhere eliminates the Constitutional requirement of "reasonable probability ... of actual notice" and opportunity to defend. In his opinion, the Chief Justice wrote:

> The automobile introduced special problems with respect to the service of process. Statutes were enacted many years ago providing for service upon a nonresident motorist by service upon a statutory agent, deemed to have been designated by the motorist by the act of driving within the State. *Such statutes are upheld "if the statutory provisions in themselves indicate that there is reasonable probability that if the statutes are complied with, the defendant will receive actual notice." Wuchter v. Pizzutti,* 276 *U.S.* 13, 24, 48 *S.Ct.* 259, 262, 72 *L.Ed.* 446, 451 (1928).
>
> [*Feuchtbaum v. Constantini, supra,* 59 *N.J.* at 173, 280 *A.*2d 161 (emphasis added).]

He followed with reference to *Mullane v. Central Hanover Bank and Trust Co., supra,* 339 *U.S.* at 306, 70 *S.Ct.* at 652, 94 *L.Ed.* at 865, a long-arm jurisdiction case. *Feuchtbaum v. Constantini, supra,* 59 *N.J.* at 174, 280 *A.*2d 161.

Where it is shown that the defendant absconded after the accident, it has been held that the insurance carrier may be served. *See Krueger v. Williams,* 410 *Mich.* 144, 300 *N.W.*2d 910, *app dism'd* 452 *U.S.* 956, 101 *S.Ct.* 3102, 69 *L.Ed.*2d 967 (1981) (substitute service on insurance carrier adequate for purposes of due process because identified defendant absconded after accident); *Feuchtbaum, supra,* 59 *N.J.* at 167, 280 *A.*2d 161; *Young v. Bunny Bazaar, Inc.,* 107 *N.J.Super.* 320, 258 *A.*2d 158 (Law

Div.1969); *Rudikoff v. Byrne,* 101 *N.J.Super.* 29, 242 *A.*2d 880 (Law Div.1968).

What constitutes minimum contacts sufficient to confer jurisdiction has been given varying interpretation. Nonetheless, in all long-arm cases, fundamental notions of fair play and substantial justice require that when someone is haled into court, she or he be given notice and an opportunity to defend. *See Lebel v. Everglades Marina, Inc.,* 115 *N.J.* 317, 558 *A.*2d 1252 (1989); *Charles Gendler & Co. v. Telecom Equipment Corp.,* 102 *N.J.* 460, 508 *A.*2d 1127 (1986); *Cruz v. Robinson Engineering,* 253 *N.J.Super.* 66, 600 *A.*2d 1238 (App.Div.), *cert. denied,* 130 *N.J.* 9, 611 *A.*2d 648 (1992).

However, we have found no case, despite extensive research, in which the kind of service upon an insurance carrier, permitted by *Feuchtbaum,* has resulted in a personal judgment against the insured in excess of the insurance policy. Clearly, the insurance carrier brought in by *Feuchtbaum* service cannot be held liable in excess of the amount of the insurance policy, absent bad faith considerations or successful disclaimer by the responsible carrier. *Rova Farms Resort, Inc. v. Investors Ins. Co. of America,* 65 *N.J.* 474, 323 *A.*2d 495 (1974). *See also Smith v. Zale Indemnity Co.,* 538 *So.*2d 1142 (La.Ct.App.1989); *Hayden v. Gokenbach,* 179 *Mich.App.* 594, 446 *N.W.*2d 332 (1989), as modified, 435 *Mich.* 856, 456 *N.W.*2d 714 (1991), a disclaimer case; *Griggs v. Bertram,* 88 *N.J.* 347, 443 *A.*2d 163 (1982); *Beek v. Ohio Cas. Ins. Co.,* 127 *N.J.Super.* 187, 316 *A.*2d 726 (Ch.Div.1974), rev'd on other grounds, 135 *N.J.Super.* 1, 342 *A.*2d 547 (App.Div.1975), aff'd., 73 *N.J.* 185, 373 *A.*2d 654 (1977); *Allstate Insurance Co. v. McHugh,* 124 *N.J.Super.* 105, 304 *A.*2d 777 (Ch.Div.1973), aff'd., 126 *N.J.Super.* 458, 315 *A.*2d 423 (App.Div.1974); *Yeomans v. All State Ins.,* 121 *N.J.Super.* 96, 296 *A.*2d 96 (Morris Cty.), aff'd., 130 *N.J.Super.* 48, 324 *A.*2d 906 (App.Div.1974); *Deblon v. Beaton,* 103 *N.J.Super.* 345, 247 *A.*2d 172 (Law Div.1968); *Gonzalez v. City of Franklin,* 137 *Wis.*2d 109, 403 *N.W.*2d 747 (1987).

Even in insurance carrier cases dealing with bad faith considerations, the insured have chosen their carrier. None of these cases speak to the situation where an uninsured has made no carrier choice. Since there is no case which goes so far as to hold an insurance company liable beyond its policy limit except for bad faith, then a fortiori, it would be wrong to hold the insured liable beyond the policy limits.

The implication with respect to the insured defendant in the case where an insured defendant is served *via* the insurance carrier, that such service comports with due process requirements, is predicated upon the consideration that the defendant knew he or she was in an automobile accident and that the defendant would be adequately represented by an insurance carrier which he or she had selected and which would afford the insured reasonably calculated notice of an action. A defendant who has actual knowledge or reasonably should know that an action is or may be pending, cannot benefit from due process protections if he or she has affirmatively taken steps to avoid service. *See Moyer v. Lott,* 86 *Mich.App.* 186, 272 *N.W.*2d 232 (Mich.Ct.App.1978) (after balancing right of plaintiff to litigate claim with right of defendant to receive notice of and opportunity to defend claim, Court held substitute service upon defendant's insurance carrier was invalid; it would not reasonably apprise defendant of pending action); *Winterstein v. Pollard,* 50 *Misc.*2d 354, 270 *N.Y.S.*2d 525 (N.Y.Sup.Ct.1966) (substitute service upon insurance carrier could not be had where plaintiff did not show that service upon defendant was impracticable due to defendant's own actions or that service upon insurance carrier would give defendant reasonably calculated notice of pending action).

In the case at bar, both premises are absent. Here, Brown said there was no accident. If there was no accident, he did not have the knowledge to which the *Feuchtbaum* case refers to as a predicate for *possibly* imposing personal liability upon him. Here also, Brown did not select the Unsatisfied Claim and Judgment Fund as an insured defendant selects a carrier. In all likelihood,

he did not know of its existence. In my view, there is a violation of the fundamental constitutional guarantees if judgment is imposed upon Brown without his having had actual notice and reasonable opportunity to defend.

*Houie v. Allen,* 192 *N.J.Super.* 517, 471 *A.2d* 429 (App.Div. 1984), presents a comparable situation. Defendant was shot and accused plaintiff of committing the crime. After it was established that this was an erroneous identification, plaintiff instituted suit against defendant, claiming, among other things, malicious abuse of process. Defendant was not served personally although there were attempts to serve him by mail at his last-known address, outside the state. When it was discovered that he had a homeowner's policy, a motion was made to serve the defendant pursuant to *Feuchtbaum,* against the carrier. The trial court denied the motion. On appeal, the Appellate Court held:

> Analysis under the due process balancing test also requires the court to consider fairness to the defendant. In the present case we construe this to require a *prima facie* showing by plaintiff that the claims asserted against defendant are covered by the latter's homeowner's insurance policy. An insurance carrier which is not under a duty to defend or indemnify defendant obviously has little incentive to seek out and notify him of a claim pending against him. *See Feuchtbaum, supra,* 59 *N.J.* at 178 [280 *A.2d* 161]. Because the trial court did not consider the other factors of the due process analysis after mistakenly holding that there was no public interest involved, it never determined whether plaintiff made a *prima facie* showing that the homeowner's insurance policy State Farm issued to defendant provides coverage for any of plaintiff's claims. Since we hold to the view that the public interest in the present case is sufficient to support a finding that defendant's right to due process would not necessarily be violated by substitute service on State Farm, the trial court should now make the full due process analysis.

> [*Id.* at 522, 471 *A.2d* 429.]

In the course of its opinion the court described the balancing test, writing:

> Substituted service on defendant's homeowner's insurance carrier is authorized if it is consistent with due process requirements enunciated in *Mullane* and embodied in the balancing test applied by the Court in *Feuchtbaum.* Under this due process analysis the public interest in allowing plaintiff to prosecute his claim may be shown where, as here, defendant is either deliberately or inadvertently evading service and plaintiff is unlikely otherwise to obtain compensation for injuries sustained as a result of defendant's alleged torts. *See Ledbetter v. Schnur,* 107

N.J.Super. [479] at 483–484 [259 A.2d 237]; *Surnack v. Surnack,* 116 N.J.Super. 294, 297–298 [282 A.2d 66] (Law Div.1971). Therefore, the trial court erred in concluding that there was insufficient public interest in this proceeding to allow substituted service on State Farm.

### [*Ibid.*]

In *Austin v. Millard,* 164 *N.J.Super.* 219, 395 A.2d 1267 (App. Div.1978), the court adverted to the balancing test laid down in *Feuchtbaum,* and reversed a trial court's refusal to permit service on the insurance carrier for the non-owner of an automobile involved in a motor vehicle collision. In that case the owner asserted that at the time of the accident the automobile was operated by someone known only as "Anatole," an automobile mechanic, who could not be found. The Appellate Division reversed the trial court and remanded for the purpose of entering an order, affording plaintiffs a reasonable time to locate "Anatole." The court wrote:

> We consider the fact that Anatole allegedly perpetrated a hit-and-run accident and then fled the Haver automobile leaving injured parties behind. Under such circumstances Anatole could be said to be reasonably apprised of the possibility of a lawsuit. As noted in *Feuchtbaum, supra* 59 N.J. at 178 [280 A.2d 161], "[I]n an automobile case, no defendant need be without notice unless he chooses and wants to be."

### [*Id.* at 224, 395 A.2d 1267.]

What emerges from both *Howie v. Allen, supra,* and *Austin v. Millard, supra,* is that in the application of *Feuchtbaum,* due process considerations control. In *Howie,* they were sufficient to cause the court to come to the conclusion that *Feuchtbaum* could not be applied without a prima facie showing of coverage for the accident in question. *Austin* is not so clear, but there is no doubt that the court was controlled by due process considerations. Applying those considerations here, the result follows.

There is no indication here that Brown absconded; indeed, as noted, he asserts there was no accident. There are strong indications that, had plaintiff investigated carefully, Brown could have been found for purposes of service since he is a postal employee

and has been located for purposes of wage execution. I therefore hold that the judgment obtained against him is void because of lack of proper service and opportunity to defend.

I note that for statute of limitation purposes, once the complaint has been filed, the statute is stayed. *Cf. Grubb v. J.C. Penney Co., Inc.*, 155 *N.J.Super.* 103, 382 *A.*2d 405 (App.Div.1978); *Leake v. Bullock*, 104 *N.J.Super.* 309, 250 *A.*2d 27 (App.Div.1969). ·