707 A.2d 204

MARGARET SAMUEL, PLAINTIFF–APPELLANT,
v. JOHN DOE, DEFENDANT.

MARKET TRANSITION FACILITY OF NEW JERSEY, PLAIN-
TIFF–RESPONDENT, v. MARGARET SAMUEL, DEFEN-
DANT–APPELLANT, v. JOHN DOE, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Submitted October 29, 1997—Decided April 2, 1998.

Shebell, P.J.A.D., filed opinion concurring in part and dissent-
ing in part.

Before Judges SHEBELL, A.A. RODRIGUEZ and COBURN.

*Pellettieri, Rabstein and Altman*, attorneys for appellant (*Edward S. Slaughter, Jr.*, of counsel; *Kelley Johnson*, on the briefs).

*Gebhardt & Kiefer*, attorneys for respondent (*Robert G. Englehart*, on the brief).

The opinion of the court is delivered by

RODRIGUEZ, A. A., J.A.D.

In deciding this appeal, we hold that *R.* 4:26–4 which proscribes the entry of a final judgment against a person designated by a fictitious name should be relaxed, pursuant to *R.* 1:1–2 in order to avoid an injustice.

The circumstances of this case are unusual. Plaintiff, Margaret Samuel, was injured in a single car collision while she was a passenger in her father's automobile. The automobile, a 1988 Chrysler LeBaron, was being driven by a young man whom she had met earlier that evening. She does not know his name, address, or whereabouts.

The accident occurred in the early morning hours of May 10, 1992. Earlier that evening, Samuel was driving the LeBaron, which was used primarily by her, home to New Jersey from her college in West Virginia. The LeBaron was insured by respondent Market Transition Facility of New Jersey (MTF) through its servicing carrier HCM Corporation. On the way to a relative's home in Long Beach Island, Samuel stopped at two taverns, The Hudson House and The Ketch. Samuel had worked as a waitress in the area during previous summers and was friendly with many of the patrons, bartenders and bouncers at these establishments. Samuel became intoxicated and was therefore, unable to recall subsequent events. Her last recollection prior to the accident was that she was "drinking shots with a bunch of people."

According to police investigators, some witnesses indicated that they saw Samuel at The Ketch with two young men who were staying at the northern end of Long Beach Island. One man was around twenty-two years old, large frame, with blond hair. The other young man had dark hair. No one remembered seeing Samuel leave. Through hypnosis, she recalled going to a 7–11 convenience store in Ship Bottom after leaving The Ketch. Police investigators confirmed with the store manager that a threesome fitting the description of Samuel and the two young men visited the store at about 3:30 a.m.

The accident occurred shortly after 3:30 a.m. in Harvey Cedars, a nearby town north of the convenience store. Police Officer Charles Tricka was first to arrive at the scene. It appeared to Tricka that the LeBaron had hit a telephone pole while traveling northbound on Long Beach Boulevard. He found Samuel seated in the rear seat wearing her seat belt. She was bleeding from the chin and appeared dazed. The front and rear passenger seats were covered with Samuel's belongings. There was no one near the LeBaron. A search of the immediate vicinity did not reveal the presence of any other occupants of the automobile. A police investigation failed to locate eyewitnesses to the accident.

Samuel filed a lawsuit alleging that she sustained injuries while a passenger in the LeBaron, due to the negligence of its driver. She designated the driver of the LeBaron as "John Doe." She moved for substituted service upon the MTF. The motion was denied. Samuel then served the complaint upon her father, the owner of the LeBaron and named insured under the MTF policy. MTF objected to service upon its insured. Samuel moved for substituted service on MTF again. This time the motion was granted. MTF filed a motion for leave to appeal. We granted the motion and summarily reversed ruling that:

> Substituted service cannot be made on a fictitious defendant. [Samuel] may serve the fictitious defendant by publication. In any event, the complaint may be amended to substitute defendant's true name and effect service on him directly or by substitution at such time as his identity is determined.[1]

A motion for reconsideration was denied.[2] Service upon the fictitiously-named driver was made by publication in The Trenton Times.

MTF filed a declaratory judgment action seeking a determination that it had: (1) no defense or indemnification obligations to the fictitious defendant; (2) no direct obligations to Samuel under the liability coverage of the policy, and (3) no obligation to provide

---

[1] *Samuel v. Doe*, No. AM–1053–94T3 (App. Div. June 30, 1995).

[2] *Samuel v. Doe*, No. AM–6136–94T3 (App.Div. August 16, 1995).

uninsured motorist (UM) benefits to Samuel. The actions were consolidated and the personal injury action was stayed pending resolution of the declaratory action.

MTF moved for summary judgment. The judge granted the motion. He concluded that Samuel was not entitled to UM benefits under the MTF policy because she was injured in a single vehicle collision and that vehicle was insured. The judge also reasoned that Samuel could not benefit from bodily injury coverage provided by the MTF policy because she had to first obtain a judgment against the driver of the LeBaron and *R.* 4:26–4 proscribes the entry of a judgment against a fictitious defendant. Thus, the judge agreed with MTF's argument that in "this unique factual scenario," Samuel "falls through the cracks."

On appeal, Samuel contends that: (1) the judge committed reversible error by holding that she is barred from uninsured motorist benefits under the MTF policy, and (2) public policy considerations call for coverage under the unique facts of this case (Not Argued Below).

■ We disagree with the first contention. The judge correctly found that Samuel could not receive UM benefits under the MTF policy because the LeBaron is not an uninsured vehicle. This express requirement of the MTF policy is rooted in the language of *N.J.S.A.* 17:28–1.1. We are not persuaded by any of the three arguments advanced by Samuel, *i.e.* (1) that the policy language is ambiguous (not raised below), (2) that the judge's decision contravenes the insured's reasonable expectation of coverage, and (3) the judge's decision contravenes the legislative intent regarding UM coverage. Therefore, Samuel is not entitled to benefits under the UM endorsement of the MTF policy.

■ We conclude, however, that Samuel is not left without a remedy. If Samuel is able to establish that she was injured as a result of the negligence of an identifiable driver of the LeBaron, she will obtain a judgment in her favor against the driver. If she is further able to prove that the driver was a permissive operator of the LeBaron, the MTF policy will provide coverage to such

driver and satisfy the judgment up to the policy's limit.[3] The MTF argues that Samuel cannot proceed without establishing the identity of the driver because she is precluded by *R.* 4:26–4. In pertinent part that rule provides that, "[n]o final judgment shall be entered against a person designated by a fictitious name." Thus, the strict application of this rule of procedure precludes an injured passenger in an insured vehicle from proceeding against an alleged tortfeasor simply because she does not know his name. Such result runs counter to the long established principle that, "[j]ustice impels strongly towards affording the plaintiffs their day in court on the merits of their claim." *Viviano v. CBS, Inc.,* 101 *N.J.* 538, 549, 503 *A.*2d 296 (1986). Therefore, we conclude that *R.* 4:26–4 should be relaxed so that Samuel may proceed against the driver of the LeBaron although he is identified only as "John Doe." Although she does not have to prove his *identity,* she still has the burden of proving the *existence* of the driver of the LeBaron at the time of the accident.

The goal of the Rules of Practice "is not so much rigid compliance with the letter of the Rules as it is the attainment of substantial justice." *Id.* at 550, 503 *A.*2d 296. The Rules are not an end unto themselves, but a means of serving the ends of justice. *Id.* at 550–51, 503 *A.*2d 296. For that reason, the Rules expressly provide for relaxation when necessary to avoid an injustice. *R.* 1:1–2, the relaxation rule, provides,

> The rules in Part I through Part VIII, inclusive, shall be construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay. Unless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice. In the absence of rule, the court may proceed in any manner compatible with these purposes.

The unique facts here call for such a relaxation of *R.* 4:26–4.

We do not perceive that the relaxation in this case will prejudice the MTF's ability to defend. It is not unusual that an insurer will

---

[3] Samuel's recovery is of course subject to a reduction based on her degree of comparative negligence if any. *See Lee v. Kiku Restaurant,* 127 *N.J.* 170, 603 *A.*2d 503 (1992).

afford coverage to an individual that is unavailable to participate in the litigation through death, absence from the state or non-cooperation. Nor is it unusual for an insurer to afford coverage to an individual who has not been served with a summons and complaint. The practice of substituted service upon a carrier contemplates that very occurrence. Here, the only difference is that the unavailable driver is unidentified. As long as Samuel establishes that she was injured while someone drove the LeBaron with her permission, the carrier is in no different position than if it knew the driver's name.

Our holding is a narrow one. It is not at all unusual that a party is injured in an automobile accident through the negligence of an unidentified person. The victims in such accidents do not fall through the cracks without a remedy because the tortfeasor is unidentified. In most such instances, the UM coverage will apply. The difference here is that the unidentified tortfeasor was driving the same vehicle occupied by the injured party and owned by her father.

Accordingly the summary judgment in favor of MTF is reversed. The matter is remanded to the Law Division to determine whether another person was driving the LeBaron at the time of the accident and whether such person was a permissive driver pursuant to the terms of the MTF policy. If so, the parties will proceed to trial of the liability action and MTF will provide coverage and indemnification to the driver of the LeBaron.

Reversed and remanded.

SHEBELL, P.J.A.D., concurring in part, and dissenting in part.

I concur with my colleagues' finding that Samuel should "not receive UM benefits under the MTF policy because the LeBaron is not an uninsured vehicle." *N.J.S.A.* 17:28–1.1. I disagree, however, with their decision to relax *Rule* 4:26–4, pursuant to *Rule* 1:1–2, in order to allow Samuel to obtain a judgment against the fictitious "John Doe" defendant.

Although I agree that Samuel should not be left without a remedy, it is not necessary to circumvent *Rule* 4:26–4 in order to achieve this result. The most effective and direct procedural remedy would be to allow Samuel, on remand, in the interests of justice, to file a counterclaim in MTF's declaratory judgment action. *R.* 4:7–4; *See generally, Jeffer v. National Fire Ins. Co. of Pittsburgh,* 306 *N.J.Super.* 82, 84, 703 *A.*2d 316 (App.Div.1997) (involving defendant filing answer, counterclaim, and third party claim for declaratory judgment in response to plaintiff's complaint for declaratory judgment); Appleman, *Insurance Law and Practice* § 11375, at 446 (1980) (stating that a "defendant in an action for declaratory judgment may counterclaim for affirmative relief, and secure an award under the policy or other relief upon such counterclaim if successful").

In a declaratory judgment action pursuant to a counterclaim, the court may determine not only the parties' rights under an insurance contract, but also issues of fact. *See N.J.S.A.* 2A:16–53; *N.J.S.A.* 2A:16–58 ("When a proceeding under this article involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are determined in other actions in the court in which the proceeding is pended."). As long as Samuel establishes that she was injured while someone else drove the LeBaron with her permission, and that she made reasonable efforts to locate the unknown driver, she may defeat summary judgment on this issue and proceed with her injury claims with MTF providing coverage and indemnification to the driver of the LeBaron.

It is understandable why Samuel's counsel filed only an answer rather than a counterclaim in the declaratory judgment action; it was not unreasonable to assume that perfection of the claim against MTF could await the obtaining of the required verdicts in the injury action against the unknown defendant. If a counterclaim had been filed, however, the procedural avenues of this case would have been much easier to traverse, and the "falling through the cracks" problem perceived by the majority would not have

been an issue. Accordingly, I part company from my colleagues, in that I see no reason or purpose to enter judgment against the unknown defendant in contravention of our court rules. In the interests of justice, on remand, the court should permit Samuel to file a counterclaim in the MTF declaratory judgment action, and resolve the issues of whether she was injured while someone else was driving the LeBaron with her permission, and whether she has made reasonable efforts to locate the driver.

Another option, on remand, would be for the trial judge to construct the procedure as though, in effect, a counterclaim had been filed. Whether or not to try the declaratory judgment action before the injury action rests in the sound discretion of the court. *R.* 4:38–2; *Tobia v. Cooper Medical Center,* 136 *N.J.* 335, 643 *A.*2d 1 (1994); *Ventura v. Ford Motor Corp.,* 180 *N.J.Super.* 45, 433 *A.*2d 801 (App.Div.1981). Thus, the trial judge could simply opt to try the injury action before the declaratory judgment action, and allow the resolution of the issues in the declaratory judgment action to be conditionally based on the findings to be made by the jury in the injury action. Interrogatories could be propounded on the jury to determine whether Samuel made reasonable efforts to locate the driver and whether the driver was driving with Samuel's permission. If Samuel is unable to establish these points, then a finding in favor of MTF would be warranted. In addition, the court could also present to the jury, if warranted, the issue of Samuel's comparative negligence, *Lee v. Kiku Restaurant,* 127 *N.J.* 170, 603 *A.*2d 503 (1992), and the damages, if any, to which Samuel is entitled. Trying the cases in this order would give MTF the clear message that they should appear in defense of the John Doe defendant in the injury action, based upon a judicially recognized reservation of right. There is no reason why MTF cannot participate in the injury trial with leave of court while preserving its rights in the declaratory judgment action.

Therefore, I concur in the result, but dissent as to the procedure that the majority would employ to bring a just conclusion to these actions.