727 A.2d 1016

MARGARET SAMUEL, PLAINTIFF–RESPONDENT, v. JOHN DOE, SAID NAME JOHN DOE BEING FICTITIOUS, DEFENDANT.

MARKET TRANSITION FACILITY OF NEW JERSEY, PLAINTIFF–APPELLANT, v. MARGARET SAMUEL, DEFENDANT–RESPONDENT, AND JOHN DOE, SAID NAME BEING FICTITIOUS, DEFENDANT.

Argued January 20, 1999—Decided April 21, 1999.

*Joseph F. Trinity,* argued the cause for appellant (*Gebhardt & Kiefer,* attorneys; *Robert G. Engelhart,* on the brief).

*Kelley L. Johnson,* argued the cause for respondent (*Pellettieri, Rabstein and Altman,* attorneys; *Edward Slaughter, Jr.,* of counsel).

The opinion of the Court was delivered by

O'HERN, J.

This appeal presents a conundrum—a riddle without an apparent solution—in part because of the case's procedural posture. In May 1992, twenty-one-year-old plaintiff Margaret Samuel was returning to the home of her aunt and uncle on Long Beach Island from her college in West Virginia. After the long drive home from West Virginia, she stopped at the Ketch, a tavern on the south end of Long Beach Island. She there met old friends and made new acquaintances. Samuel appears to have overindulged and in the enjoyment of the homecoming to have made an ill-advised choice of a designated driver. All that is known for certain thereafter is that she was involved in a serious one-car automobile accident. When police arrived at the scene of the accident, they found that her car had run into a telephone pole. There was no one in the driver's seat. Samuel was in the back seat with her seatbelt fastened. She was bleeding and appeared dazed. Her injuries were serious and disabling. Because of her condition, Samuel could not later recall the name of her companion who was driving the car, even after hypnosis. The Ketch tavern appears to have been the antithesis of Cheers, the tavern of legend. The Ketch is a place where no one knows your name. No witnesses to either the accident or the identify of the driver have ever come forward. Although no one saw Samuel leave the Ketch, a manager at a local 7–Eleven convenience store said that he saw someone fitting Samuel's description with two males approximately fifteen minutes before the accident.

The automobile insurance policy on Samuel's car provided personal injury protection benefits (PIP) to cover Samuel's medical expenses and income continuation benefits; liability coverage for her bodily injuries; and uninsured motorist/underinsured motorist coverage. Due to the extent of her injuries, she sought compensation for her pain and suffering and permanent loss of bodily function.

## I.

Here began her procedural problems. A question arose as to whether she would pursue uninsured motorist benefits or liability coverage under the provisions of her father's automobile insurance policy that had been issued by the Market Transition Facility (MTF). Samuel filed a complaint in the Law Division seeking damages for her personal injuries that were allegedly caused by the driver's negligence in operating the automobile. Samuel used a fictitious John Doe designation for the defendant because the identity of the driver of the vehicle was unknown. The trial court allowed substituted service of the John Doe complaint upon MTF. On an interlocutory appeal, the Appellate Division required service by publication, which was made on the John Doe defendant in *The Trenton Times*.

Meanwhile, MTF filed a declaratory judgment action asserting that it was not obliged to indemnify or defend the fictitious defendant; cover Samuel under the policy's liability coverage; or provide Samuel uninsured (UM)/underinsured (UIM) benefits under the policy. According to MTF, Samuel was not entitled to UM coverage because the vehicle was insured. MTF also asserted that it could not be required to defend or indemnify plaintiff under the liability policy unless the driver were identified. The liability and UM issues were consolidated, and the John Doe personal injury action was stayed until the declaratory judgment action was resolved. The parties settled the PIP claim.

The trial court granted MTF's motion for summary judgment, ruling that Margaret Samuel was not covered under either the

UM/UIM or liability provisions of the policy. Concerning liability and UM/UIM coverage, the trial court concluded that

> [Samuel] has no direct claim against MTF under the liability provisions of its policy issued to her father. He is not a party to this action. He has not been shown to be legally responsible for her motor vehicle accident in any way and its resulting damage ... to her. The plaintiff has also not shown entitlement to UM and UIM endorsement coverage, since the language of the policy which is standard statutory text excludes from its definition of uninsured motor vehicles any vehicle owned by or furnished for the regular use of you—that is the insured—or any family member. Here, the motor vehicle in question was owned by the insured, William Samuel. It was provided for the regular use of his daughter. It is, therefore, excluded from the definition of uninsured motor vehicle.

The court also found that Samuel was precluded from recovering under the bodily injury provisions of the liability policy because she had not first recovered judgment from the driver, and that such recovery would be impossible under the fictitious pleading rule if the driver remained unidentifiable.

On appeal, the Appellate Division agreed with the trial court that Ms. Samuel was not entitled to coverage under the UM provisions of the policy.[1] Although the unknown operator may be thought of as an uninsured phantom or hit-and-run operator, he was not operating an unknown vehicle. The vehicle was insured. The Appellate Division held, however, that if there were a permissive operator of Mr. Samuel's vehicle, the John Doe defendant, although unidentified, would be considered a "person" entitled to

---

[1] UM coverage is optional first-party coverage insuring the policy holder and others against the possibility of injury or property damage caused by the negligent operation of an uninsured motor vehicle. Pursuant to *N.J.S.A.* 17:28–1.1b, insurance companies must offer such coverage.

*N.J.S.A.* 17:28–1.1e(2) defines uninsured vehicle as:

(a) a motor vehicle with respect to the ownership, operation, maintenance, or use of which there is no bodily injury liability insurance ...;

(b) a motor vehicle with respect to the ownership, operation, maintenance, or use of which there is bodily injury liability insurance in existence but the liability insurer denies coverage or is unable to make payment with respect to the legal liability of its insured ...;

(c) a hit and run motor vehicle as described in section 18....

"Uninsured motor vehicle" shall *not include* ... a motor vehicle owned by or furnished for the regular use of the named insured or any resident of the same household .... (emphasis added).

coverage under the bodily injury provisions of the father's automobile insurance policy.[2] The issue that divided the panel was a procedural question—how a judgment could be entered against a fictitious defendant.

Although *Rule* 4:26–4 allows actions to be brought against fictitious defendants, it states that, "[n]o final judgment shall be entered against a person designated by a fictitious name." Under the language of the rule, Samuel could not proceed to judgment against Doe if his name remained unknown. To ensure that Samuel's case did not "fall through the cracks," thereby leaving her without coverage, 309 *N.J.Super.* 406, 410, 707 *A.*2d 204 (1998), the majority ruled that the fictitious defendant rule should be relaxed because justice so required under *Rule* 1:1–2. The court stated, however, that although plaintiff "does not have to prove [the driver's] *identity,* she still has the burden of proving the *existence* of the driver . . . ." *Id.* at 411, 707 *A.*2d 204.

One member of the Appellate Division dissented in part. He saw no need to relax *Rule* 4:26–4. *Id.* at 412, 707 *A.*2d 204 (Shebell, J., dissenting). He would allow plaintiff to file a counterclaim in the declaratory judgment action. *Id.* at 413, 707 *A.*2d 204. He left the order of the procedures to the discretion of the trial court. *Id.* at 414, 707 *A.*2d 204. In the declaratory judgment action, plaintiff would be required to demonstrate that she was

[2] The liability portion provides coverage for " 'bodily injury' or 'property damage' for which any insured becomes legally responsible because of an auto accident," and defines an "insured" as "[a]ny person using your 'covered auto.' " It excludes "[a]ny person using a vehicle without a reasonable belief that person is entitled to do so."

Similarly, the UM portion states that MTF will "pay damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury': . . . ." The UM portion also defines "insured" as "[y]ou or any family member [or] . . . [a]ny other person 'occupying' your covered auto. . . ." It excludes from coverage "any vehicle . . . [o]wned by or furnished or available for the regular use of you or any 'family member' [in addition to] 'bodily injury' sustained by any person: . . . [w]hile 'occupying,' or when struck by any motor vehicle owned by you or any 'family member' which is not insured for this coverage under this policy . . ."

injured due to the negligence of an authorized driver of the car, and that reasonable efforts were made to locate the driver. *Ibid.* In the liability and injury action, he would have allowed a jury to consider plaintiff's comparative negligence. *Ibid.* MTF appealed as of right under *Rule* 2:2–1(a)(2).

## II.

On one level, the case appears to present only a procedural question of pleading, whether the fictitious defendant rule may be relaxed to allow judgment to be entered against an unnamed person. On another level, the case poses the substantive question of whether an automobile insurance policy provides coverage for injuries caused by an operator who is unidentified. That substantive question is not before us. Because both opinions of the Appellate Division are premised on procedural grounds, not substantive grounds, MTF's appeal of right is limited to the procedural issues raised by the dissent. *See Manalapan Realty, L.P. v. Township Comm. of Twp. of Manalapan,* 140 *N.J.* 366, 377, 658 *A.*2d 1230 (1995). Before the Appellate Division, MTF believed that Samuel had conceded the issue of coverage under the liability portion of the policy. Because MTF contended that Samuel was seeking coverage only under the UM portion of the policy, MTF did not brief the liability issue. In retrospect, MTF might have preferred to afford UM coverage under the policy because it would have had the benefit of the arbitration provisions of the policy. If MTF had not been satisfied by the outcome of the arbitration, it could have appealed the decision within thirty days. *N.J.S.A.* 39:6A–31.

Taking the case as we find it—a case that is predicated upon there being coverage for an unidentified driver under the bodily injury provisions of the policy—the question is how to determine if there was in fact such an unidentified permissive driver of the car and whether that person's negligence caused plaintiff's injuries. There should be a way out of the procedural muddle. The New Jersey Legislature has created a "comprehen-

sive statutory system, which is designed to have 'financially responsible persons available to meet the claims of persons wrongfully injured in automobile accidents.' " *Ross v. Transport of New Jersey,* 114 *N.J.* 132, 135, 553 *A.2d* 12 (1989) (quoting *Selected Risks Ins. Co. v. Zullo,* 48 *N.J.* 362, 371, 225 *A.2d* 570 (1966)). We have described this comprehensive statutory scheme as providing an "adequate safety net for individuals hurt in such cases...." *Id.* at 146, 553 *A.2d* 12. Putting aside for the moment the consideration of Samuel's own negligence, we are certain that the Legislature would intend that Samuel land somewhere in that safety net.

■ There are basically only two possible factual scenarios concerning the existence of an unidentified driver. Either the plaintiff was herself the driver of the car, in which event she would not be entitled to coverage, or she gave permission to a companion at the Ketch tavern to drive her car.[3]

The Appellate Division concluded that if Samuel establishes that she was injured by the negligence of another driver who had her permission to use the car, "the carrier is in no different position than if it knew the driver's name." 309 *N.J.Super.* at 412, 707 *A.2d* 204. That is a bit of an overstatement. It is much easier to defend a case when you have had interviews and taken statements from your insured. Still, it is not unusual for an insurance company to have to defend a claim without an insured. Most jurisdictions provide for service of process upon an insurance company when an insured motorist cannot be located. *Couch on Ins.* § 124:19 (3d ed.1998); *see, e.g., Dobkin v. Chapman,* 21 *N.Y.2d* 490, 289 *N.Y.S.2d* 161, 236 *N.E.2d* 451 (1968) (holding that service under those circumstances comports with due process); *see also Perry v. Brown,* 272 *N.J.Super.* 572, 577, 640 *A.2d* 879

---

[3] Of course, there is another possibility, that plaintiff actually knows the name of the driver. If she is concealing the name to shield that person from liability, civil or criminal, she will be barred from any recovery and will be herself subject to sanctions. Resolution of that issue is better suited for the trial court.

(Law Div.1993) (stating that "[w]here it is shown that defendant absconded after the accident," insurance carrier may be served) (citations omitted). We thus agree that although there are problems for MTF in defending the case, the problems are manageable. However, because of the important interests of the insurance company implicated by such unusual circumstances as are present, we believe that there should be a two-step proceeding.

The first proceeding will determine whether plaintiff can establish that there was another person who was operating the automobile with her permission at the time of the accident. Every effort should be made to identify that person, including rigorous discovery from persons who may have been present at the tavern or the scene of the accident on that evening. If plaintiff can establish that an authorized person was operating the vehicle but cannot successfully identify the person, then plaintiff should be permitted to proceed with her claim for liability and damages against the insurance company as the real party in interest. Technically, a judgment is not required to make such a claim. Once it is established that there was a "covered person" who was operating the car, the insurance company is contractually required to provide indemnity for that person's fault. Law and regulatory policy bind an insurance company to negotiate in good faith with Samuel. *N.J.S.A.* 17:29B–4(9)(f); *N.J.A.C.* 11:3–10.3. "A decision not to settle must be a thoroughly honest, intelligent and objective one." *Bowers v. Camden Fire Ins. Ass'n,* 51 *N.J.* 62, 71, 237 *A.*2d 857 (1968).

If a settlement cannot be reached, Samuel may sue MTF directly. A liability insurance policy creates rights not only for the policy holder but as well for those to whom reparations will be made. Policy holders sometimes assign their indemnification rights to the injured parties when insurance companies do not negotiate in good faith. *Wang v. Allstate Ins. Co.,* 125 *N.J.* 2, 592 *A.*2d 527 (1991); *Battista v. Western World Ins. Co.,* 227 *N.J.Super.* 135, 545 *A.*2d 841 (Law Div.1988), *aff'd in part, rev'd in part,* 240 *N.J.Super.* 330, 573 *A.*2d 464 (App.Div.), *certif. denied,* 127

*N.J.* 553, 606 *A.*2d 366 (1991). If there is coverage, the pleadings in the John Doe case may be amended to name MTF as the real party in interest.[4] In that direct action, plaintiff's comparative negligence can be considered. *See Lee v. Kiku Restaurant,* 127 *N.J.* 170, 603 *A.*2d 503 (1992). If plaintiff is more than fifty percent negligent, she cannot recover.

If it is preferable to avoid prejudicial reference to the existence of insurance, then with MTF's consent, the John Doe pleadings may remain in the present form, *see Krohn v. New Jersey Full Ins. Underwriters Ass'n,* 316 *N.J.Super.* 477, 481, 720 *A.*2d 640 (App.Div.1998) (explaining that reference to existence of insurance may unfairly influence jury verdict), or the declaratory judgment action may be the vehicle for determining liability and damages.

### III.

To summarize, we agree with the Appellate Division that the case should be remanded for further proceedings. The proceedings should be conducted in two phases. In the first phase, plaintiff shall have the burden of establishing that there was a driver other than herself who was, at the time of the accident, operating the vehicle with her permission. If the answer to that question is "no," then the case will proceed no further and summary judgment will be granted to MTF. Plaintiff would be entitled to no recovery under her father's automobile insurance policy other than for the PIP damages. If the answer to the question is "yes," that there was another person who was the permitted driver of the vehicle and that person was unknown to plaintiff, then plaintiff will proceed on the second phase of her

---

[4] We note that in the analogous situation of a hit-and-run driver operating an insured car, suit would be brought not against a "John Doe," but directly against the Director of the Division of Motor Vehicles as custodian of the Uninsured Motorist Fund. *N.J.S.A.* 39:6–78; *see also High v. Southwestern Ins. Co.,* 520 *P.*2d 662, 666 (Okla.1974) (holding where John Doe hit-and-run driver was tortfeasor, that injured party was permitted to sue defendant under UM clause, even though damages and owner and driver of damaging vehicle were not identifiable).

Superior Court proceedings. In this proceeding the insurance company would be the real party in interest, against which plaintiff may seek a judgment. If it is preferable, the insurance company may have the case captioned in the name of the unknown driver, but recognizing that the company is the real party in interest. If there is a jury trial in the declaratory judgment action, at MTF's request, a separate jury should be empaneled for the injury and damages action.

As modified, the judgment of the Appellate Division is affirmed.

*For modification and affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—none.