741 A.2d 149 (1999)
326 N.J. Super. 316
Catherine LONGO, Plaintiff-Appellant,
v.
MARKET TRANSITION FACILITY OF NEW JERSEY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 1999.
Decided December 8, 1999.
*150 Anthony F. Malanga, Jr., Belleville, for plaintiff-appellant (Gaccione, Pomaco & Beck, attorneys; Mr. Malanga, of counsel and on the brief).
Robert A. McDermott, Millburn, for defendant-respondent (McDermott & McGee, attorneys; Mr. McDermott, on the brief).
Before Judges HAVEY, KEEFE and A.A. RODRÍGUEZ.
The opinion of the court was delivered by KEEFE, J.A.D.
Plaintiff Catherine Longo appeals from the entry of summary judgment in favor of defendant Market Transition Facility of New Jersey (MTF). The Law Division judge, relying on our opinion in Samuel v. Doe, 309 N.J.Super. 406, 707 A.2d 204 (App.Div.1998), aff'd as modified, 158 N.J. 134, 727 A.2d 1016 (1999), found that plaintiff was not eligible for uninsured motorist (UM) benefits because the vehicle she occupied at the time of the accident was not uninsured within the meaning of N.J.S.A. 17:28-1.1e(2). We disagree and reverse.
Plaintiff alleges that on November 25, 1991, she was a patron at a tavern in Belleville where she overindulged in alcoholic beverages. Upon leaving the tavern and realizing that her ability to drive was impaired by the consumption of alcohol, plaintiff entered her vehicle and fell asleep in the passenger seat. When she awoke, she discovered that her vehicle had struck a parked vehicle some distance from the tavern. Plaintiff's head had struck the windshield on the passenger side, causing head and facial injuries. Plaintiff alleges that the vehicle was driven from the place where it was parked to the scene of the accident by an unknown third person without plaintiff's permission. The operator of the vehicle left the scene of the accident.[1]
At the time of the accident, plaintiff's vehicle was insured by MTF. The policy contained a standard UM endorsement. Although the exact date does not appear in the record, plaintiff made a demand for UM benefits under the policy several years after the accident. By letter dated October 2, 1996, MTF denied benefits. The sole reason for the denial was the definition of "Uninsured Motor Vehicle" contained in the policy. While the letter recited the entire policy definition, the following portion of the definition was highlighted in bold letters:
Neither `uninsured motor vehicle' nor `underinsured motor vehicle' includes any vehicle or equipment
1. Owned by or furnished or available for the regular use of you or any family member.
*151 Plaintiff filed a declaratory judgment action seeking coverage under the UM endorsement. After discovery was taken, MTF moved for summary judgment and plaintiff cross-moved. At oral argument on the motion in the Law Division, MTF contended that the above quoted language in the policy, which essentially tracks the language of N.J.S.A. 17:28-1.1e(2), precluded UM coverage because plaintiff was occupying a vehicle owned by her at the time of the accident and claimed that it was uninsured. The motion judge agreed with MTF and granted summary judgment in its favor.
While the current appeal was pending in this court, the Supreme Court decided Samuel. MTF filed a supplemental brief contending that the Supreme Court's decision was dispositive of this appeal. Plaintiff, on the other hand, claims that Samuel is factually distinguishable in that plaintiff in this case has claimed that she did not give permission to the unknown driver to operate her vehicle, whereas in Samuel, the plaintiff contended that she had given permission but could not remember the identity of the person to whom permission was extended. We agree with plaintiff that Samuel is factually distinguishable and that the difference in the facts requires a different legal analysis.
In Samuel, after discussing the procedural history of the case in the Law and Appellate Divisions, the Supreme Court began its analysis with the assumption that coverage was afforded Samuel under the liability portion of the policy, and framed the question before it as "how to determine if there was in fact such an unidentified permissive driver of the car and whether that person's negligence caused plaintiff's injuries." 158 N.J. at 140, 727 A.2d 1016 (emphasis added). In further refining the inquiry, the Court said:
There are basically only two possible factual scenarios concerning the existence of an unidentified driver. Either the plaintiff was herself the driver of the car, in which event she would not be entitled to coverage, or she gave permission to a companion at the Ketch tavern to drive the car.

[Id. at 141, 727 A.2d 1016.]
Another possibility was advanced in a footnote, namely, that plaintiff knew the identity of the driver but concealed it. Ibid. n. 3. The point is that Samuel was decided in the context of the insured having given permission to some unidentified driver to operate her vehicle, a factual scenario that ostensibly invokes coverage under the liability section of an automobile policy, rather than the UM endorsement, as is the case here where permission was not given. See Rutgers Cas. Ins. Co. v. Collins, 158 N.J. 542, 548-49, 730 A.2d 833 (1999) (holding that the omnibus clause of a liability policy is invoked when an insured under the policy gives another person permission to operate the vehicle). Thus, contrary to MTF's contention in its supplemental brief, the Supreme Court did not impliedly affirm this court's or the Law Division's holding that Samuel was not entitled to UM coverage.[2] Indeed, as to UM coverage, the Court in passing suggested otherwise:
In retrospect, MTF might have preferred to afford UM coverage under the policy because it would have had the benefit of the arbitration provisions of the policy. If MTF had not been satisfied by the outcome of the arbitration, it could have appealed the decision within thirty days. N.J.S.A. 39:6A-31.
[Samuel, supra, 158 N.J. at 140, 727 A.2d 1016.]
Arguably, the quoted passage could be interpreted to suggest that UM coverage *152 might have been available to Samuel, and MTF might have been better off affording that coverage to her. Obviously, if UM coverage could have been available to Samuel where she had granted another person permission to drive her vehicle, it should more clearly be available to an insured, such as plaintiff in this case, who did not grant permission. We do not, however, rest our decision in this case on the Supreme Court's passing reference to the UM issue in Samuel.
In the present situation, the unknown driver of plaintiff's vehicle was operating it under circumstances amounting to "theft, or the like[,]" a scenario that permits the conclusion that the liability section of the MTF policy does not afford coverage. Rutgers Cas. Ins. Co., supra, 158 N.J. at 549, 730 A.2d 833 (and cases cited therein holding that liability coverage is not afforded in such situations). To put it somewhat differently, the operation of an insured vehicle under a factual scenario amounting to "theft, or the like" permits an insurer to disclaim liability coverage. Such an event, essentially the event that occurred here, renders the vehicle "uninsured" within the meaning of the UM statute. Under the statute, an "uninsured motor vehicle" is:
(b) a motor vehicle with respect to the... operation ... of which there is bodily injury liability insurance in existence but the liability insurer denies coverage....

[N.J.S.A. 17:28-1.1e(2).]
Undoubtedly, MTF could have and would have denied coverage under the liability section of plaintiff's policy had plaintiff attempted to bring a suit against a John Doe defendant in a situation where, as here, plaintiff denies having given permission to another person to operate her vehicle. Without question, plaintiff's vehicle fits within the definition of an uninsured motor vehicle as set forth in N.J.S.A. 17:28-1.1e(2). MTF's suggestion, therefore, that plaintiff could have had a Samuel-type remedy had she only acted more diligently is somewhat disingenuous and certainly not supported by the holding in Samuel.
The issue in this case ultimately boils down to whether the final sentence of N.J.S.A. 17:28-1.1e(2) requires a conclusion that, despite the unavailability of liability coverage under the facts of this case, plaintiff is also precluded from receiving UM benefits. MTF relies upon the following passage in the statute to argue that UM coverage is not available to plaintiff in this case:
"Uninsured motor vehicle" shall not include ... a motor vehicle owned by or furnished for the regular use of the named insured....

[N.J.S.A. 17:28-1.1e(2).]
At first blush, the statute unambiguously prevents the plaintiff from claiming that her vehicle was an uninsured vehicle at the time of the accident, even though it was operated by an unknown driver under circumstances amounting to "theft, or the like[,]" which would have permitted an insurer to deny liability coverage even to an innocent third party. What appears to be a plain language interpretation of the statute, however, results in an anomaly: an insured, such as Samuel, who gives permission to another person to operate her vehicle but cannot remember the identity of that person because of her intoxication is permitted to recover against her insurer under the liability section of her policy, while the plaintiff in this case, who did not give permission to anyone and was essentially the victim of a theft, is barred from recovery.
Lest plaintiff's intoxication distract one from the absurdity of this result, we hasten to point out that MTF's interpretation of the statute would require the same result in an analogous context that is more likely to occur and where the insured is a more sympathetic victim. Almost weekly, our newspapers relate an event similar to the following: a woman entering her vehicle in a darkened parking lot is accosted *153 by a stranger intent on stealing the vehicle. The thief pushes the woman into the vehicle and drives off with the victim as a passenger. The thief then crashes the vehicle into an object and runs from the scene, leaving the victim seriously injured. Could the Legislature possibly have intended the insured victim in such circumstances to be left without recourse? We think not.
As the Samuel Court observed:
The New Jersey Legislature has created a "comprehensive statutory system, which is designed to have `financially responsible persons available to meet the claims of persons wrongfully injured in automobile accidents.'" We have described this comprehensive statutory scheme as providing an "adequate safety net for individuals hurt in such cases...." Putting aside for the moment the consideration of Samuel's own negligence, we are certain that the Legislature would intend that Samuel land somewhere in that safety net.
[Samuel, supra, 158 N.J. at 140-41, 727 A.2d 1016 (citation omitted).]
If Samuel was entitled to the comfort of the Legislature's safety net, it is clear to us that the plaintiff in this case and the hypothetical victim of the car jacking should also be entitled to its protection.
In construing a statute, the goal of the court is to ascertain the intent of the Legislature with reasonable certainty. Division of Motor Vehicles v. Kleinert, 198 N.J.Super. 363, 369, 486 A.2d 1324 (App. Div.1985). The source of legislative intent is not limited to the language of the statute. In addition to the wording of the statute, the policy behind it and the legislative scheme of which it is a part, as well as the legislative history and concepts of reasonableness, are essential aids in determining legislative intent. Paramus Substantive Cert. No. 47, 249 N.J.Super. 1, 8, 591 A.2d 1345 (App.Div.1991); Coletti v. Union Cty. Bd. of Chosen Freeholders, 217 N.J.Super. 31, 35, 524 A.2d 1270 (App.Div. 1987). Courts will enforce legislative intent even when it conflicts with the language of the statute. See Longworth v. Van Houten, 223 N.J.Super. 174, 192-93, 538 A.2d 414 (App.Div.1988). See also N.J. Builders, Owners and Managers Ass'n v. Blair, 60 N.J. 330, 338, 288 A.2d 855 (1972) (holding that "[w]here a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter"); Henry v. Shopper's World, 200 N.J.Super. 14, 18, 490 A.2d 320 (App. Div.1985) (holding that "[a] statute must be interpreted sensibly, rather than literally, with the purpose and reason for the legislation being controlling") (citation omitted). As Chief Justice Weintraub recognized long ago:
It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end "words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms." Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339 (1956); Wright v. Vogt, 7 N.J. 1, 6, 80 A.2d 108 (1951); Glick v. Trustees of Free Public Library, 2 N.J. 579, 584, 67 A.2d 463 (1949).
[New Capitol Bar & Grill Corp. v. Division of Empl. Sec. Dep't. of Labor and Ind., 25 N.J. 155, 160, 135 A.2d 465 (1957).]
The critical section of the statute now under consideration was added by amendment in 1983 as a part of The New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984. L.1983, c. 362, § 1, eff. Oct. 4, 1983. Unfortunately, no legislative history accompanied *154 the specific amendment in question. One authority on the subject opines that the amendment had the effect of overriding prior case law that addressed the "owned-but-uninsured-vehicle" issue and found UM coverage in favor of injured claimants. Craig & Pomeroy, New Jersey Auto Insurance Law, § 20:4-2b (1998). The authors cite two cases in support of their proposition, Beek v. Ohio Cas. Ins. Co., 135 N.J.Super. 1, 342 A.2d 547 (App. Div.1975), aff'd o.b., 73 N.J. 185, 373 A.2d 654 (1977) and Fernandez v. Selected Risks Ins. Co., 163 N.J.Super. 270, 394 A.2d 877 (App.Div.1978), aff'd, 82 N.J. 236, 412 A.2d 755 (1980).
In Beek, supra, the plaintiff insured was operating a motorcycle owned by him when he was struck and injured by an uninsured motorist. 135 N.J.Super. at 3, 342 A.2d 547. Plaintiff's motorcycle was insured and he collected the full amount of his UM coverage from the insurer of the motorcycle. Ibid. Plaintiff, however, also owned an automobile that was insured by a different insurer. Id. at 2, 342 A.2d 547. He made a claim for UM benefits against that insurer as well. Id. at 3, 342 A.2d 547. The automobile insurer denied coverage on the ground that an exclusion in its policy prohibited recovery of UM benefits where the insured was injured while occupying a vehicle he owned but insured through another company. Ibid. This court found that there was no indication in the statute that UM benefits could not be obtained where an insured owns two vehicles and has purchased two policies of insurance from different companies. Id. at 5, 342 A.2d 547. The Supreme Court agreed. Beek v. Ohio Cas. Ins. Co., 73 N.J. 185, 186, 373 A.2d 654 (1977).
We are not as sanguine as the authors are in the conclusion that the subject amendment to the statute was meant to legislatively overturn Beek. Beek was decided on the authority of the Supreme Court's earlier decision in Motor Club of Am. Ins. Co. v. Phillips, 66 N.J. 277, 330 A.2d 360 (1974). Ibid. A subsequent case, Lundy v. Aetna Cas. and Sur. Co., 92 N.J. 550, 554, 458 A.2d 106 (1983), also relied on Phillips and Beek in finding coverage where the injured claimant was permitted to obtain UM benefits as if defendant had issued three separate policies for the three vehicles it insured that were owned by the claimant. Phillips, Beek, and Lundy, are generally recognized as "stacking" cases. These cases are considered to have been overruled by the anti-stacking provisions of the 1983 amendments, rather than the statutory passage now under consideration. See New Jersey Mfrs. Ins. Co. v. MacVicar, 307 N.J.Super. 507, 510, 704 A.2d 1343 (App.Div.), certif. denied, 156 N.J. 381, 718 A.2d 1210 (1998). The claimant in Beek did not seek UM coverage from his automobile insurer by claiming that either his motorcycle or automobile was uninsured. It was the vehicle of a third party that was uninsured. Accordingly, the statute under consideration, which provides that an uninsured motor vehicle does not include a vehicle owned by the insured, is literally inapplicable to factual situations as presented in Beek.
A much different fact pattern was presented in Fernandez v. Selected Risks Ins. Co., 82 N.J. 236, 412 A.2d 755 (1980). In that case, plaintiff purchased an insurance policy that covered two cars. Id. at 238, 412 A.2d 755. He then moved to Georgia where his brother-in-law became a member of plaintiff's household. Ibid. The brother-in-law owned an automobile that was uninsured, and he was driving that vehicle when it was involved in an accident in which plaintiff's wife was injured. Ibid. The plaintiff's insurer denied UM coverage based on an exclusion prohibiting such coverage where the uninsured vehicle is owned by the insured or a relative resident of the insured's household. Ibid. The Supreme Court, relying on its reasoning in Beek, found coverage. Id. at 240, 412 A.2d 755.
However, Fernandez, unlike Beek, was not a stacking case. Rather, the claimant *155 was contending that his brother-in-law's automobile was an uninsured motor vehicle. It is this scenario that the statutory amendment under consideration directly affects because it prohibits a claimant, such as Fernandez, from claiming that an automobile "furnished for the regular use of the named insured or any resident of the same household" is an uninsured motor vehicle. N.J.S.A. 17:28-1.1e(2). The statute focuses attention on an automobile other than the one that is insured by it, here the brother-in-law's automobile.
We believe that Judge Brody correctly described the purpose of the statutory language in question in Landi v. Gray, 228 N.J.Super. 619, 550 A.2d 768 (App.Div.1988), disapproved on other grounds, New Jersey Mfrs. Ins. Co. v. Breen, 153 N.J. 424, 429, 710 A.2d 421 (1998)(holding that the Court's "disapproval of Landi should be understood to refer only to the Landi court's invalidation of the exclusion of UIM coverage when an underinsured vehicle of a resident family member caused the claimant's injury"). Judge Brody observed:
We note that the statute expressly excludes from its definition of an uninsured motor vehicle "a motor vehicle owned by or furnished for the regular use of the named insured or any resident of the same household; ..." N.J.S.A. 17:28-1.1e(2). There is no similar exclusion for underinsured motor vehicles. The different statutory treatment may be explained by the fact that motor vehicle liability insurance, providing minimum coverage, is compulsory. N.J.S.A. 39:6B-1. That legislative policy is advanced by giving every member of a household an incentive to see to it that all motor vehicles regularly used by household members are insured for liability. The statutory exclusion, though arguably harsh, provides that incentive by denying an injured member of a named insured's household the benefit of the named insured's omnibus uninsured motorist coverage where the member was injured while using an uninsured vehicle owned or regularly used by one or more members of the same household.

[Id. at 623, 550 A.2d 768.]
Thus, we hold the legislative goal of the statutory language under consideration was to force owners of multiple vehicles and members of their household who owned vehicles to insure all such vehicles in compliance with New Jersey's Compulsory Insurance Law. L. 1972, c. 70, c. 197-200, c. 203-205. Its purpose was not to deny benefits to those who complied with the law and suffered injuries that would otherwise create an expectation of coverage for UM benefits under the typical UM endorsement of an automobile policy. In this case, plaintiff's vehicle is deemed "uninsured" only because an unknown third person operated the vehicle without the insured's permission in circumstances akin to "theft, or the like[,]" not because plaintiff failed to fulfill her obligation to properly insure the vehicle. Denying plaintiff eligibility for UM benefits under such circumstances does not foster the goal of the statutory amendment under consideration. It therefore should not be applied literally to plaintiff or others similarly situated. We hasten to add that by finding plaintiff eligible for UM benefits, we do not pass on the merits of her claim to entitlement. The credibility issues presented by the record before us are matters within the province of the arbitrators.
The judgment under review is reversed. The matter shall proceed to arbitration in accord with plaintiff's demand and pursuant to the terms of the policy.
NOTES
[1] Although plaintiff gave other versions of the accident, MTF concedes in its brief before us that we are required to accept these facts as true for the purpose of determining whether UM coverage is available to plaintiff, the issue of credibility being one for the arbitrator should eligibility for coverage be found.
[2] Indeed our passing reference to the fact that Samuel would not be entitled to UM coverage should not be understood to mean more than that Samuel excluded herself from such coverage when she permitted another person to drive her automobile, because in such circumstances her vehicle was insured, not uninsured. Samuel v. Doe, supra, 309 N.J.Super. at 410, 707 A.2d 204.