842 A.2d 243

DANIEL COX, PLAINTIFF, v. JOSEPH P. RUSSELL
AND DANIEL GARCIA, DEFENDANTS.

NEW JERSEY MANUFACTURERS INSURANCE COMPANY,
PLAINTIFF–RESPONDENT, v. JOSEPH P. RUSSELL, DANIEL
GARCIA, DEFENDANTS, AND DANIEL COX, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 30, 2004—Decided February 23, 2004.

Before Judges KING, LINTNER and REISNER.

*John L. Antonas* argued the cause for appellant (*Jorgenson & Barnes,* attorneys; *Mr. Antonas,* on the brief).

*Michael T. Kearns* argued the cause for respondent (*Hoagland, Longo, Moran, Dunst & Doukas,* attorneys; *James B. Moran,* of counsel and on the brief).

The opinion of the court was delivered by

LINTNER, J.A.D.

Daniel Cox appeals from two Law Division orders for summary judgment. The first, entered on May 29, 2002, dismissed Cox's personal injury complaint against his grandfather Daniel Garcia, the owner of the vehicle that struck Cox. The second, entered on April 14, 2003, in favor of New Jersey Manufacturers Insurance Company (NJM), found that Garcia's vehicle was not an uninsured motor vehicle under the terms of NJM's policy. We affirm the order of May 29, 2002, dismissing Cox's complaint against Garcia, however, we reverse the order of April 14, 2003, denying uninsured motorist (UM) coverage for Cox's alleged injuries.

On June 9, 1999, Cox, who resided in the same household with Garcia, borrowed Garcia's car and drove to the home of defendant Joseph Russell. Garcia's vehicle was insured by NJM with a policy providing $100,000 in liability and UM limits. Cox visited Russell for a short time and then decided to leave. Russell did not want Cox to leave. When Cox attempted to leave, Russell blocked Cox's path by standing in front of the vehicle. Cox exited the vehicle. As he walked toward the front of the car to talk to Russell, Russell ran around Cox, entered the car, and drove it forward, striking Cox.

Cox filed a personal injury complaint against both Garcia and Russell, alleging that Russell was operating the vehicle as Garcia's agent. Garcia answered and moved for summary judgment, claiming that there was no agency relationship between him and Russell, and that Russell did not have permission to operate the vehicle.

On May 16, 2002, Cox advised NJM that he was going to file a petition for arbitration pursuant to the UM coverage provisions of

the policy. Following entry of the May 29 summary judgment, Cox amended his complaint, seeking UM coverage from NJM. Russell never answered, could not be found, and default was eventually entered against him. Meanwhile, NJM filed a declaratory judgment complaint seeking an order denying both liability and UM coverage. Both complaints were consolidated. The April 14, 2003, order granting summary judgment in favor of NJM declared that Garcia's vehicle "was not an 'underinsured motor vehicle' or 'uninsured motor vehicle' under the terms of the NJM insurance policy issued to Daniel Garcia."

On appeal, Cox asserts that he is entitled under the facts to UM coverage. Alternatively, Cox contends that if he is not entitled to UM coverage then the initial summary judgment order was entered in error because there was a genuine issue of material fact as to whether Russell had permission to operate Garcia's vehicle. Cox concedes that Russell must be a permissive driver in order for liability coverage to attach. The underlying principle is well settled. Once a person is given permission to use a vehicle, "any subsequent use short of theft or the like while it remains in [the initial permissive user's] possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy." *Matits v. Nationwide Mut. Ins. Co.*, 33 *N.J.* 488, 496–97, 166 *A.*2d 345 (1960).

Relying on *St. Paul Insurance Co. v. Rutgers Casualty Insurance Co.*, 232 *N.J.Super.* 582, 588, 557 *A.*2d 1052 (App.Div.1989), Cox argues that coverage under the liability portion of the NJM policy is dependent upon whether Russell had a reasonable belief that he was entitled to operate Garcia's vehicle and that he is entitled to a plenary hearing on that issue. We disagree. The facts in *St. Paul* are distinguishable. There, the issue was whether a seventeen-year-old unlicensed driver who had a driver's permit had his mother's permission to operate the vehicle for which she had purchased insurance. In *St. Paul*, we dealt with an initial permissive user, the insured's son, and indicated that "if

[the mother], on occasion, had allowed [her son] to drive the car on public roads without supervision, it could be argued that on the date of the accident [the son] reasonably believed he had his mother's permission...." *Id.* at 589, 557 *A.*2d 1052.

Here, unlike the facts in *St. Paul,* Russell was not the initial permissive user. Russell has never been found and has not provided a different version from that supplied by Cox. The only evidence is that Russell unexpectedly entered the vehicle after Cox got out, and drove it into Cox. There are no facts to support the notion that Russell reasonably believed he had permission from Cox to use the vehicle. The order finding that Russell did not have permission to use the vehicle was properly entered. *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). Accordingly, Cox is not entitled to coverage under the liability provisions of the NJM policy.

We come to a different conclusion on Cox's eligibility for UM coverage. NJM contends that there was insufficient evidence to establish that Russell "intended to steal" Garcia's vehicle and that, absent a finding of carjacking, UM coverage is not triggered. We reject NJM's contentions. As we have previously pointed out, any subsequent use "short of theft or the like" while a vehicle remains in the initial permissive user's possession, though not within the contemplation of the parties, is a permissive use that affords liability coverage under the standard omnibus clause of an automobile insurance policy. *Matits, supra,* 33 *N.J.* at 497, 166 *A.*2d 345. Thus, a vehicle is rendered an uninsured vehicle where the conduct of a tortfeasor in obtaining a motor vehicle amounts to "theft or the like." *Longo v. Market Transition Facility of N.J.,* 326 *N.J.Super.* 316, 321, 741 *A.*2d 149 (1999). Indeed, we have observed that UM coverage should be "more clearly available to an insured who did not grant permission" to use an otherwise insured vehicle. *Ibid.* Extending UM coverage for injuries caused by intentional acts, the Court in *Shaw v. City of Jersey City,* 174 *N.J.* 567, 578, 811 *A.*2d 404 (2002), observed:

We agree with the Montana Supreme Court's observation that "the average insured reasonably expects that, so long as an injury-causing event is unforeseen and unprovoked by the insured, injuries caused by uninsured motorists will be covered by UM coverage regardless of whether they were caused negligently or intentionally." *Wendell v. State Farm Mut. Auto. Ins. Co.*, 293 *Mont.* 140, 974 *P.*2d 623, 635 (1999).

Generally, those who purchase insurance policies are entitled to a "broad measure of protection necessary to fulfill their reasonable expectations." *Kievit v. Loyal Protective Life Ins. Co.*, 34 *N.J.* 475, 482, 170 *A.*2d 22 (1961).

■ The record supports the conclusion that Cox is eligible for UM coverage. The only evidence is Cox's own version of events that Russell unexpectedly took Garcia's vehicle and ran Cox over. Thus, the facts amount to a showing of "theft or the like." These same facts were the basis for the finding in NJM's favor that Russell did not obtain permission from Cox to use the vehicle. The determination urged by NJM that Russell lacked permission is tantamount to a finding that he obtained the vehicle by conduct equivalent to "theft or the like." More importantly, Russell's non-permissive use rendered the vehicle uninsured at the time of the accident.

NJM also asserts that Cox is not entitled to UM coverage because his "own version of the incident between himself and Russell indicates that [they] were engaged in an argument or horseplay at the time." We note that the only reference to horseplay is found in the police report concerning the incident. According to Cox, Russell was not present when the police arrived and never gave his version to the investigating officer. The conclusion by the investigating officer was mere conjecture or speculation. Thus, there would appear to be no basis in the record for the conclusion that Cox's injuries resulted from his own conduct. Of course, NJM would not be prevented from offering evidence at UM arbitration on the issue of liability that Cox's injuries were a proximate result of contributory fault. Suffice it to say, NJM's contention that Cox engaged in horseplay or in someway provoked his own injuries does not preclude Cox's

eligibility for UM benefits, although it may affect his entitlement on the merits.

Finally, NJM argues that Cox cannot make a claim for UM coverage because the policy excludes coverage where the uninsured vehicle is owned by, or furnished for, the regular use of the named insured or resident of the household. We disposed of that same argument in *Longo, supra,* 326 *N.J.Super.* at 327, 741 *A.*2d 149, when we pointed out that the language in *N.J.S.A.* 17:28–1.1e(2), that an " '[u]ninsured motor vehicle' shall not include . . . a motor vehicle owned by or furnished for the regular use of the named insured or any resident of the same household," was intended by the Legislature

> to force owners of multiple vehicles and members of their household who owned vehicles to insure all such vehicles in compliance with New Jersey's Compulsory Insurance Law. *L.* 1972, *c.* 70, *c.* 197–200, *c.* 203–205. Its purpose was not to deny benefits to those who complied with the law and suffered injuries that would otherwise create an expectation of coverage for UM benefits under the typical UM endorsement of an automobile policy.

In this case, Cox's vehicle is deemed "uninsured" because Russell operated it without Cox's permission, not because of the insured's failure to fulfill his obligation to properly insure the vehicle. As we previously pointed out, however, our determination that Cox is eligible for UM benefits does not mean that we have passed on the merits of his claim to entitlement.

The order for summary judgment dismissing Cox's complaint against Garcia based upon lack of an agency relationship and denying liability coverage for lack of permission is affirmed. The order declaring Cox ineligible for UM benefits is reversed, and the matter shall proceed to arbitration in accordance with Cox's demand, and pursuant to the terms of the policy.

Affirmed in part and reversed in part.